OPINION
{¶ 1} Defendant-appellant, Demarcus Oatis, appeals from his conviction in the Butler County Court of Common Pleas for one count of obstructing official business, a first-degree misdemeanor, and one count of possession of cocaine, a fifth-degree felony. Appellant contends that the trial court erred in its denial of his motion to suppress evidence obtained during the course of an investigatory stop. We affirm the decision of the trial court.
 {¶ 2} On the evening of July 12, 2004, Hamilton City Police Officers Lanny Ash and Frank Botts received a radio call reporting a theft at the nearby CVS. The suspect was identified as Mary Booker and officers were given a description of both Booker and the vehicle in which she left the scene of the theft. The officers were familiar with Booker and, within five to ten minutes of the call, observed her and two occupants parked along the road in the described vehicle. Officers Ash and Botts approached the vehicle and asked Booker and the driver to step out of the car. Appellant was a rear-seat passenger and was left in the car while the officers spoke with Booker and investigated the theft complaint.
 {¶ 3} During this time, Officer Ash observed that appellant appeared very nervous and was acting "squirmy" and "fidgety," and appeared as if he might try to run. The officer approached appellant and asked him for identification. Appellant gave a name of "Marcus Thompson," but indicated that he did not have any identification on him and that he did not know his social security number. Officer Ash checked with dispatch, who indicated that they were unable to locate any information on the name given by appellant.
 {¶ 4} At this time, Officer Botts approached to perform a search on the vehicle in relation to the theft complaint. Officer Ash asked appellant to exit the vehicle, and began to escort him to the rear of the car. Officer Botts observed what appeared to be crumbs of crack cocaine scattered along the backseat where appellant had been sitting. At that time, Officer Ash conducted a pat-down on appellant and asked him if he had any weapons on him and appellant replied that he did not. Officer Ash did not detect any weapons during his pat-down, but he did feel what he immediately believed to be an I.D. card in appellant's pocket. Officer Ash asked appellant to turn over the I.D., at which time appellant gave the Officer his driver's license, identifying him as Demarcus Oatis. Appellant stated that he had lied because he was on parole and there was a warrant out for his arrest, which was later verified by Officer Ash.
 {¶ 5} Officer Ash handcuffed and placed appellant under arrest for obstructing official business. During a search incident to that arrest, officers located a plastic bag containing what was later determined to be crack cocaine in appellant's pants pocket. Appellant was indicted on August 25, 2004 for charges of obstructing official business and possession of cocaine.
 {¶ 6} On October 22, 2004, appellant filed a motion to suppress the evidence obtained during the course of the initial pat-down and afterward, contending that Officer Ash had insufficient cause to conduct the pat-down. At a hearing on the motion, Officer Ash testified as to appellant's demeanor and behavior, the nature of the area as a high drug and crime area, and the discovery of the apparent drugs in the rear of the vehicle. Officer Ash also testified that upon feeling what he believed to be an I.D. card, he asked appellant to show it to him, and that appellant immediately did so.
 {¶ 7} The trial court overruled the motion to suppress and appellant entered no contest pleas to the two charges on January 24, 2005. Appellant now appeals his convictions, asserting the following single assignment of error:
 {¶ 8} "THE TRIAL COURT ERRED IN OVERRULING DEFENDANTA-PPELLANT'S MOTION TO SUPPRESS."
 {¶ 9} Appellant argues that the trial court erred in overruling his motion to suppress both because the stop and detention during the officers' investigation of the theft complaint was unlawful, and because the pat-down was unjustified and exceeded the scope permitted under Terryv. Ohio (1968), 392 U.S. 1, 88 S.Ct. 1868.
 {¶ 10} When reviewing the denial of a motion to suppress, we are bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. State v. Beltran, Preble App. No. CA2004-11-015, 2005-Ohio-4194, ¶ 15. Relying on the trial court's factual findings, we must then determine, without deference to the trial court, whether the court applied the appropriate legal standard. Id.
 {¶ 11} The Fourth Amendment to the United States Constitution protects individuals from unreasonable searches and seizures. State v. Brown
(Dec. 10, 2001), Clermont App. No. CA2001-04-047, at 4, citing UnitedStates v. Hensley (1985), 469 U.S. 221, 105 S.Ct. 675. However, not all personal encounters between law enforcement officials and citizens are "seizures" that implicate Fourth Amendment guarantees. Id. at 5, citingFlorida v. Bostick (1991), 501 U.S. 429, 111 S.Ct. 2382. Even when officers lack reasonable suspicion of criminal activity, they may generally approach an individual and ask questions, ask to examine identification, and request consent to conduct searches. Id.
 {¶ 12} Appellant contends that the purpose of the initial "stop" in this case was the investigation of the reported theft, and that upon contacting Booker, the sole suspect, the purpose of the stop was complete, leaving no justification for appellant's continued detention. Initially, we note that the vehicle in this case was already stopped and parked along the road when Officers Ash and Botts made contact with the occupants. Appellant challenges only his continued detention at the scene and the events which followed.
 {¶ 13} When conducting a traffic stop of a motor vehicle, an officer may detain the vehicle for a period of time sufficient to resolve the issue that led to the stop. See State v. Brown, Montgomery App. No. 20336, 2004-Ohio-4058, ¶ 13. Absent additional, reasonable and articulable facts warranting further detention, the duration of the stop may last no longer than is necessary to perform routine procedures and issue any appropriate citations. Id. Further, when a lawfully stopped vehicle contains passengers, law enforcement officers are permitted to detain those passengers for the duration of the lawful detention of the driver. Id. at ¶ 14. Additionally, officers are permitted to request identification from passengers and may order drivers and passengers to exit the vehicle. Id., citing Maryland v. Wilson (1997), 519 U.S. 408,117 S.Ct. 882 (extending applicability of "Mimms Order" to passengers). See, also, State v. Fikes (Aug. 24, 1998), Butler App. No. CA97-11-218.
 {¶ 14} The purpose of the "stop" in this case was investigation of the theft complaint and questioning the identified suspect. The officers observed Booker and two occupants in the suspect vehicle, in the area near the reported theft, within minutes of receiving the radio call notifying them of the complaint and identifying the suspect. The officers were lawfully conducting their investigatory stop of Booker and the vehicle in which she was found when appellant claims he was unlawfully detained. We are not persuaded by appellant's claim that the purpose of the stop was complete merely because the original suspect had been removed from the vehicle. Appellant, as a passenger of the vehicle lawfully under investigation, could be detained for the lawful duration of that investigatory stop. As evidenced by Officer Ash's testimony at the suppression hearing, that investigation was ongoing and included the vehicle in which Booker and appellant were observed.
 {¶ 15} Further, the officers were permitted to approach appellant and request his identification, and later, to request that he exit the vehicle. As the Second District Court of Appeals explained in State v.Hardin, "[e]ncounters are consensual where the police merely approach a person in a public place, engage the person in conversation, request information, and the person is free not to answer and walk away." Montgomery App. No. 20305, 2005-Ohio-130, ¶ 14. In Hardin, officers observed a passenger in the backseat of a vehicle, lawfully stopped in order to affect an arrest on the driver. Id. at ¶ 6. An officer approached Hardin and requested his identification, and later, requested that he exit the vehicle. Id. After consenting to a pat-down of his clothing, Hardin was arrested for possession of crack cocaine. Id. at ¶ 7. Responding to a challenge to the validity of the encounter, the Second District Court noted that:
 {¶ 16} "The request to examine one's identification does not make an encounter nonconsensual. Nor does the request to search a person's belongings. The Fourth Amendment guarantees are not implicated in such an encounter unless the police officer has by either physical force or show of authority restrained the person's liberty so that a reasonable person would not feel free to decline the officer's requests or otherwise terminate the encounter." Id. at ¶ 14.
 {¶ 17} The court further noted that in the officer's conversation with Hardin, no weapons were drawn, no handcuffs were used, and nothing in the record indicated that the officer used an intimidating tone of voice or language when he requested Hardin's identification, when he requested Hardin exit the vehicle, or when he requested Hardin's consent to pat him down. Id. at ¶ 21. The court stated also that, while the officer's testimony was that Hardin was not free to leave, Hardin himself was never told he was not free to leave. Id.
 {¶ 18} The case at hand is analogous to Hardin in that the encounter between appellant and Officer Ash was a consensual one. Nothing in the record indicates that Officer Ash's request for identification was accompanied by any "display of physical force or authority that would have caused a reasonable person in [appellant's] position to believe he was not free to decline [the] requests." Id. at ¶ 20. See, also, Statev. Brown (Dec. 10, 2001), Clermont App. No. CA2001-04-047. Although, due to the circumstances of the investigation, Officer Ash testified that appellant was not free to leave at the time of the "stop," there is nothing in the record to indicate that Officer Ash communicated that to appellant, or that he used any force or show of authority in his requests which would indicate that appellant might be compelled to comply with the requests.
 {¶ 19} As to the pat-down performed by Officer Ash, appellant contends that the officer lacked a sufficient justification to conduct the pat-down and that the pat-down itself exceeded the scope allowed underTerry v. Ohio (1968), 392 U.S. 1, 88 S.Ct. 1868.
 {¶ 20} The United States Supreme Court recognized in Terry that, where a police officer is justified in believing that an individual, whose suspicious behavior he is observing, may be armed and dangerous, the officer may make a limited search in order to protect himself and the public. State v. Evans, 67 Ohio St.3d 405, 1993-Ohio-186, ¶ 4; citingTerry, 392 U.S. at 24. "The purpose of this limited search is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence." Id. The validity of a pat-down under Terry requires that an officer have a reasonable, objective basis for conducting a protective frisk, and is to be evaluated in light of the totality of the circumstances, when viewed through the eyes of the officers on the scene. State v. Martin, Montgomery App. No. 20270, 2004-Ohio-2738, ¶ 16.
 {¶ 21} Appellant argues that there was no evidence presented at the suppression motion to support the contention that Officer Ash had a reasonable fear for his safety under which to justify a Terry pat-down. However, as the Ohio Supreme Court stated in Evans, "we know of no legal requirement that a policeman must feel `scared' by the threat of danger. Evidence that the officer was aware of sufficient specific facts as would suggest he was in danger satisfies the constitutional requirement."Evans, at ¶ 10. Similarly, the Second District Court of Appeals noted that "the issue is whether a reasonably prudent man in those circumstances would be warranted in the belief that his safety or the safety of others was in danger." Martin at ¶ 14.
 {¶ 22} This court has recognized the increased safety concern for officers where a stopped vehicle contains passengers. In State v. Fikes,
this court upheld a protective search of a passenger where, after arresting the driver of a stopped vehicle for a suspended license, officers observed the passenger had "very red eyes and slurred speech." (Aug. 24, 1998), Butler App. No. CA97-11-218, at 3. At the suppression hearing in that case, the officer had also testified to the nature of the area of the stop as a high crime area and noted that the stop had occurred at approximately 5:00 in the morning. Id. Noting the factors testified to by the officer and the increased deference by courts to permit protective frisks of passenger companions of arrestees, this court found that the officer was justified in conducting the pat-down. Id. at 5, citing United States v. Berryhill (C.A.9, 1971), 445 F.2d 1189
(finding companions of arrestees constitutionally subject to cursory "pat-down"); State v. Fellows (May 22, 1998), Cuyahoga App. No. 70900 (noting high drug-trafficking area, time of night, and suspicions of drug activity in upholding protective frisk of passenger companion of arrestee).
 {¶ 23} Additionally, it is well-recognized that the need for a protective frisk becomes more apparent where drugs are involved. The Ohio Supreme Court has stated that "the right to frisk is virtually automatic when individuals are suspected of committing a crime, like drug trafficking, for which they are likely to be armed." Evans at ¶ 9. Further, "[r]ecognizing the prevalence of weapons in places where illegal drugs are sold and used . . . an officer's fear of violence when investigating drug activity is a legitimate concern that will justify a pat-down search for weapons." State v. Martin, Montgomery App. No. 20270, 2004-Ohio-2738, ¶ 17, citing State v. Taylor (1992), 82 Ohio App.3d 434.
 {¶ 24} While the initial encounter between Officer Ash and appellant was consensual, an objective review of the facts and circumstances support the trial court's holding that Officer Ash developed sufficient reasonable suspicion that appellant could be armed, and that the pat-down of appellant was within the scope permitted by Terry. Officer Ash, a Hamilton City Police Officer since 1989, testified at the suppression hearing that within minutes of receiving the theft report, the officers located the suspect, Booker, and two occupants, appellant included, in the vehicle used to leave the scene of the theft. Officer Ash testified that he was familiar with the area and knew it to be a high drug and prostitution area, and also that he was familiar with Booker and the car used in the theft as common to the area.
 {¶ 25} Officer Ash further testified that while investigating the theft complaint, he observed appellant behaving "fidgety" and "squirmy," "as if he might try to run." When Officer Ash asked appellant for identification, appellant gave a name which was returned "unfound" on the officer's check with dispatch. Appellant was unable to give a social security number or produce an I.D. When appellant exited the vehicle, as requested by Officer Botts, the officer located what immediately appeared to him to be crumbs of crack cocaine in the seat where appellant had been. These factors, taken together and viewed objectively through the eyes of the officers on the scene, warrant a reasonable belief that appellant could be armed. The totality of the circumstances supports the trial court's holding that Officer Ash's pat down of appellant was permitted under Terry.
 {¶ 26} Further, appellant voluntarily produced his I.D. card upon Officer Ash's request to do so. Appellant alleges that Officer Ash exceeded the permissible scope of Terry in that the I.D. found in appellant's pocket could not be removed under either Terry v. Ohio
standards or those of the "plain-feel" exception found in Minnesota v.Dickerson (1993), 508 U.S. 366, 113 S.Ct. 2130.
 {¶ 27} However, the record in this case reveals that it was not Officer Ash that removed the I.D. card from appellant's pocket, but that appellant himself did so at the officer's request. The Second District Court of Appeals recently reviewed a case analogous to the one at hand inState v. Sears, Montgomery App. No. 20849, 2005-Ohio-3880. In that case the appellant was also a vehicle passenger whose furtive and suspicious movements during an investigatory stop prompted officers to conduct a safety frisk. Id. at ¶ 2-17. During the pat-down, an officer felt two oblong objects which he believed to be spoons in the pants pocket of the passenger. Id. at ¶ 17. The officer asked the passenger for permission to remove the spoons from his pocket and the passenger consented. Id. Upon removing the spoons, the officer observed that they were covered in drug residue and arrested the passenger for possession of drug paraphernalia. Id. at ¶ 18.
 {¶ 28} On review, the Court upheld the denial of the passenger's motion to suppress while reversing the trial court's finding that the passenger's consent in removing the spoons had been involuntary. The Court explained that whether consent is voluntary is a question of fact to be determined from the totality of the circumstances, and that the burden of proving voluntary consent rested on the state. Id. at ¶ 34-37. Further, an expression of consent would be involuntary where it was coerced, that is, the product of compulsion arising from physical force or threats of physical force, or granted only in submission to a false claim of lawful authority. Id. at ¶ 38.
 {¶ 29} In upholding the retrieval of the spoons, the Court stated that the officer's request to remove the spoons was not coercive or threatening in a manner making the passenger's consent involuntary. The Court stated, "while the officers . . . did exercise some authority or control over Defendant by ordering him out of the vehicle for safety reasons, which they were entitled to do . . . and by patting him down for weapons, Defendant was not under arrest at that time, and the control exercised by the officers was no more than that inherent in those minimally intrusive procedures." Id. at ¶ 38. Noting that nothing in the facts implied that the officer's request was coercive or threatening, the Court found that the record supported a finding that the passenger's consent had been voluntary.
 {¶ 30} Similarly, while the issue of the appellant's voluntary production of the I.D. card was not discussed at length in the motion to the lower court, a finding of voluntariness is supported by the record. Officer Ash testified that while conducting the pat-down of appellant, he felt what he immediately believed to be an I.D. card, which appellant had claimed he did not have. At the motion hearing, Officer Ash testified that upon feeling the I.D. card, he asked appellant to take it out of his pocket and that appellant then did so, handing his driver's license to Officer Ash and explaining that he had lied about his identity because there was an outstanding warrant for his arrest. On cross-examination, appellant's attorney asked if the officer had commanded that appellant remove the I.D., to which the officer again stated that he had merely requested the I.D.
 {¶ 31} We find that the facts and circumstances developed in the record support a finding that appellant voluntarily turned over the I.D. card that Officer Ash requested after his pat-down. As in Sears, nothing in the record indicates that Officer Ash acted with any amount of force or threat of force which would involuntarily compel appellant's compliance with the officer's request. And while appellant was subject to some control during the pat-down, he was not under arrest at that time.
 {¶ 32} As appellant voluntarily produced the I.D. which led to the discovery of the outstanding warrant, the arrest for obstructing official business was proper. Therefore, the search incident to his arrest and the discovery of the crack cocaine with which he was also charged was also proper.
 {¶ 33} Appellant's assignment of error is overruled.
 {¶ 34} Judgment affirmed.
Young and Bressler, JJ., concur.