[Cite as *State v. Morgan*, 2014-Ohio-2472.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY


| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| | | CASE NOS. CA2013-08-146 |
| Plaintiff-Appellee, | : | CA2013-08-147 |
| | : | O P I N I O N |
| - vs - | | 6/9/2014 |
| | : | |
| DEBORA MORGAN, et al., | : | |
| Defendants-Appellants. | : | |


CRIMINAL APPEAL FROM BUTLER COUNTY AREA I COURT
Case No. CRB 1300421


Michael T. Gmoser, Butler County Prosecuting Attorney, Lina N. Alkamhawi, Government Services Center, 315 High Street, 11th Floor, Hamilton, Ohio 45011, for plaintiff-appellee

Michael K. Allen & Associates, Mary K. Martin, 5181 Natorp Boulevard, Suite 210, Mason, Ohio 45040, for defendants-appellants


**S. POWELL, J.**

{¶ 1} Defendants-appellants, Debora and Kenneth Morgan, appeal from their respective convictions in the Butler County Area I Court after a jury found them each guilty of cruelty to animals. For the reasons outlined below, we affirm.

{¶ 2} On the morning of March 25, 2013, Kenneth telephoned Dr. David Krausher, a local veterinarian, to check on a downed horse that was shivering and declining rapidly. Upon arriving at the Morgans' property located at 1848 Millville Oxford Road, Hanover

Township, Butler County, Ohio, Dr. Kausher met with Kenneth who then escorted him back to the horse barn. According to Dr. Kausher, the barn was very cluttered with large amounts of manure built up in the stalls. Dr. Kausher also noticed a dead horse covered in snow lying near the back door leading to the pasture, as well as a very thin horse – the horse subject to this appeal – standing nearby in its own stall. At the time he arrived, Dr. Kausher did not see any food or water for any of the animals.

{¶ 3} After the pair weaved their back way through the dirty and unkempt barn to the downed horse, the horse, which Dr. Kausher characterized as "severely, severely underweight," attempted to get up, but was unable to move and eventually collapsed back to the ground. Due to its poor condition and inability to move, Dr. Kausher recommended the horse be euthanized. According to Dr. Kausher, Kenneth then asked what he thought was wrong with the horse, to which Dr. Kausher responded that the horse was being starved. Without any protest, Dr. Kausher then euthanized the downed horse. After euthanizing the animal, Dr. Kausher got back into his truck, drove to the end of the driveway, and called police to make a report of animal cruelty.

{¶ 4} After making the call to police, Julie Flanagan, a deputy dog warden for Butler County and humane agent for the Butler County Humane Society, spoke with Dr. Kausher. During their conversation, Deputy Flanagan informed Dr. Kausher that she knew of the Morgans and had received complaints regarding their horses before. Deputy Flanagan then contacted Julie Holmes, the chief dog warden for Butler County and chief humane agent with the Butler County Humane Society, who told Deputy Flanagan to speak with the prosecutor and ask about getting a search warrant for the Morgans' property. After speaking with the prosecutor, Deputy Flanagan requested a search warrant from the Butler County Area I Court. The court issued the search warrant for the Morgans' property later that day.

{¶ 5} After receiving the search warrant, Meg Stephenson, the executive director for

the Butler County Humane Society, as well as Dr. Kausher, Deputy Flanagan and Chief Holmes, all went to the Morgans' property to execute the search warrant and evaluate the only remaining horse still alive on the Morgans' property. During this time, Debora and Kenneth both came out to the barn and Debora was heard referring to the horses as "her horses, my horses, our horses," when speaking to the officers executing the search warrant. The search of the barn revealed very little food and water for the horse – to the point where the grain bags were covered with dust and cobwebs – and that the remaining horse was on the verge of death due to starvation. The horse was then removed from the Morgans' property and placed in the care of the Butler County Humane Society. Since its removal from the Morgans' care, the horse has made a drastic improvement and has transformed into an otherwise normal and healthy animal.

{¶ 6} On April 1, 2013, Deputy Flanagan filed two complaints in the Butler County Area I Court charging both Debora and Kenneth with cruelty to animals in violation of R.C. 959.13(A)(1), a second-degree misdemeanor. The Morgans, who appeared pro se throughout the proceedings below, then filed a motion to suppress arguing the search warrant was invalid. The trial court denied the motion. A one-day jury trial was then held on July 29, 2013. Following the jury trial, the Morgans were found guilty as charged. The trial court then sentenced Debora to 90 days in jail, all of which was suspended, as well as three years of community control and a fine of $700. The trial court also sentenced Kenneth to 90 days in jail, with only 60 days suspended, three years of community control and a $700 fine.

{¶ 7} The Morgans, now represented by counsel, appeal from their respective convictions, raising seven assignments of error for review. For ease of discussion, the Morgans' third, fourth and fifth assignments of error will be addressed out of order.

{¶ 8} Assignment of Error No. 5:

{¶ 9} THE TRIAL COURT IMPROPERLY DENIED APPELLANTS' MOTION TO

- 3 -

SUPPRESS WHEN IT FOUND THAT THE SEARCH WARRANT WAS PROPERLY ISSUED.

{¶ 10} In their fifth assignment of error, the Morgans argue the trial court erred by denying their motion to suppress because the search warrant issued in this case was not authorized upon the request of a "law enforcement officer" as required by Crim.R. 41(A). We disagree.

{¶ 11} Appellate review of a ruling on a motion to suppress presents a mixed question of law and fact. *State v. Gray*, 12th Dist. Butler No. CA2011-09-176, 2012-Ohio-4769, ¶ 15, citing *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8. When considering a motion to suppress, the trial court, as the trier of fact, is in the best position to weigh the evidence in order to resolve factual questions and evaluate witness credibility. *State v. Johnson*, 12th Dist. Butler No. CA2012-11-235, 2013-Ohio-4865, ¶ 14; *State v. Eyer*, 12th Dist. Warren No. CA2007-06-071, 2008-Ohio-1193, ¶ 8. In turn, when reviewing the denial of a motion to suppress, this court is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Durham*, 12th Dist. Warren No. CA2013-03-023, 2013-Ohio-4764, ¶ 14; *State v. Oatis*, 12th Dist. Butler No. CA2005-03-074, 2005-Ohio-6038, ¶ 10. "An appellate court, however, independently reviews the trial court's legal conclusions based on those facts and determines, without deference to the trial court's decision, whether as a matter of law, the facts satisfy the appropriate legal standard." *State v. Thomas*, 12th Dist. Warren No. CA2012-10-096, 2013-Ohio-3411, ¶ 18, quoting *State v. Cochran*, 12th Dist. Preble No. CA2006-10-023, 2007-Ohio-3353, ¶ 12.

{¶ 12} Pursuant to Crim.R. 41(A), "[a] search warrant authorized by this rule may be issued by a judge of a court of record to search and seize property located within the court's territorial jurisdiction, upon the request of a prosecuting attorney or a law enforcement officer." As defined by Crim.R. 2(J), "law enforcement officer" means:

a sheriff, deputy sheriff, constable, municipal police officer, marshal, deputy marshal, or state highway patrolman, and also means any officer, agent, or employee of the state or any of its agencies, instrumentalities, or political subdivisions, upon whom, by statute, the authority to arrest violators is conferred, when the officer, agent, or employee is acting within the limits of statutory authority.

"R.C. 1717.06 gives [humane] agents of county humane societies the authority to prosecute and arrest any person found in violation of cruelty to animals." *State v. Balduff*, 6th Dist. Huron No. H-92-029, 1993 WL 24483, *3 (Feb. 5, 1993). In turn, those same humane agents would constitute "law enforcement officers" authorized to request and execute a search warrant under Crim.R. 41(A). *Id.*

{¶ 13} As noted above, the Morgans argue the search warrant was invalid because Deputy Flanagan's credentials do not meet the statutory requirements necessary for her to be a qualified humane agent, and therefore, she is not a "law enforcement officer" authorized to request and execute a search warrant under Crim.R. 41(A). In reaching this conclusion, the Morgans cite to a provision found in R.C. 1717.06, which states, in pertinent part, the following:

> In order to qualify for appointment as a humane agent under this section, a person first shall successfully complete a minimum of twenty hours of training on issues relating to the investigation and prosecution of cruelty to and neglect of animals. The training shall comply with rules recommended by the peace officer training commission under section 109.73 of the Revised Code and shall include, without limitation, instruction regarding animal husbandry practices as described in division (A)(12) of that section. A person who has been appointed as a humane agent under this section prior to the effective date of this amendment may continue to act as a humane agent for a period of time on and after the effective date of this amendment without completing the training. However, on or before December 31, 2004, *a person who has been appointed as a humane agent under this section prior to the effective date of this amendment shall successfully complete the training described in this paragraph and submit proof of its successful completion to the appropriate appointing mayor or probate judge in order to continue to act as a humane agent after December 31, 2004.*

(Emphasis added.)

{¶ 14} Although acknowledging Deputy Flanagan had completed the required minimum 20 hours of training prior to the December 31, 2004 deadline, the Morgans allege Deputy Flanagan is not a qualified humane agent because she never testified at the suppression hearing "that she provided her certificate to the appointing mayor or probate court as required by law."[1] Deputy Flanagan, however, did testify during the suppression hearing that she provided a certificate indicating she had successfully completed the necessary training to her supervisor – the former chief dog warden – to submit to the probate court. The Morgans did not provide any evidence indicating the certificate was not then properly submitted to the probate court, nor did they provide any other evidence to call into question whether Deputy Flanagan is a qualified humane agent. When ruling on the Morgans' motion to suppress, the trial court found Deputy Flanagan's testimony was credible and that she "was a properly appointed humane agent" who was "authorized by O.R.C. § 1717.06 to seek and execute the search warrant" in compliance with Crim.R. 41(A). As this finding was supported by competent, credible evidence, we find no error in the trial court's decision.

{¶ 15} That said, even if we were to find a violation of Crim.R. 41(A) occurred, which we do not, such a violation would merely constitute a technical, "non-fundamental" violation of the rule. As this court has stated previously, "[a]bsent a legislative mandate requiring its application, the exclusionary rule will not be applied to statutory violations falling short of constitutional violations." *State v. Turner*, 12th Dist. Butler No. CA91-10-165, 1992 WL 121685, *2 (June 1, 1992), citing *State v. Myers*, 26 Ohio St.2d 190, 196 (1971); *see, e.g.,*

---

1. Contrary to the Morgans' claims otherwise, we note that R.C. 1717.06 does not specifically require a "certificate" to be submitted to the appointing mayor or probate judge. Rather, the statute merely requires "proof" that the training was successfully completed.

*State v. Wilmoth*, 22 Ohio St.3d 251, 263-264 (1986) (finding the failure to comply with the Crim.R. 41(C) requirement that a written affidavit be submitted to obtain a search warrant was not "a violation of constitutional magnitude" requiring suppression where there had been no evidence of bad faith on the part of the police or prejudice to the defendant). In turn, as this alleged violation constitutes, at worst, a technical, "non-fundamental" violation of Crim.R. 41(A), the exclusionary rule simply does not apply here. This is particularly true given the fact that the Morgans have failed to provide any evidence that they were somehow prejudiced by this alleged violation. Therefore, we find no error in the trial court's decision denying the Morgans' motion to suppress. Accordingly, the Morgans' fifth assignment of error is overruled.

{¶ 16} Assignment of Error No. 3:

{¶ 17} THERE WAS INSUFFICIENT EVIDENCE TO CONVICT APPELLANTS OF ANIMAL CRUELTY UNDER R.C. §959.13(A)(1).

{¶ 18} In their third assignment of error, the Morgans argue their respective convictions for cruelty to animals were based on insufficient evidence. We disagree.

{¶ 19} Whether the evidence presented at trial is legally sufficient to sustain a verdict is a question of law. *State v. Hoskins*, 12th Dist. Warren No. CA2013-02-013, 2013-Ohio-3580, ¶ 16, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). When reviewing the sufficiency of the evidence underlying a criminal conviction, an appellate court examines the evidence in order to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Kinsworthy*, 12th Dist. Warren No. CA2013-06-053, 2014-Ohio-1584, ¶ 52. The relevant inquiry is "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Smith*, 12th Dist. Warren Nos. CA2012-02-017 and CA2012-02-018, 2012-

- 7 -

Ohio-4644, ¶ 25, quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. In other words, "the test for sufficiency requires a determination as to whether the state has met its burden of production at trial." *State v. Boles*, 12th Dist. Brown No. CA2012-06-012, 2013-Ohio-5202, ¶ 34, citing *State v. Wilson*, 12th Dist. Warren No. CA2006-01-007, 2007-Ohio-2298, ¶ 33.

{¶ 20} The Morgans were both convicted of cruelty to animals in violation of R.C. 959.13(A)(1), a second-degree misdemeanor, which provides no person shall "[t]orture an animal, deprive one of necessary sustenance, unnecessarily or cruelly beat, needlessly mutilate or kill, or impound or confine an animal without supplying it during such confinement with a sufficient quantity of good wholesome food and water." The culpability required to support a violation of R.C. 959.13(A)(1) is recklessness. *State v. Ham*, 3d Dist. Wyandot No. 16-09-01, 2009-Ohio-3822, ¶ 39, citing *State v. Bergen*, 121 Ohio App.3d 459, 461 (1st Dist.1997). As defined by R.C. 2901.22(C), a person acts recklessly "when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature."

{¶ 21} Here, the Morgans initially argue their respective convictions must be reversed because the state failed to prove there was an insufficient amount of good wholesome food and water for the horse. However, although there was some evidence that the horse had access to a bale of hay and water on the afternoon of March 25, 2013, the overwhelming evidence indicates the horse was extremely thin and severely underweight to the point where it was on the verge of death due to starvation.

{¶ 22} For instance, Dr. Krausher, a local veterinarian for over 20 years, testified that his assessment of the horse revealed the animal was "very, very thin," appeared emaciated and was on the verge of death. Dr. Krausher also testified that the horse's condition was critical, making the animal more susceptible to disease and the potential to die from

starvation. In addition, according to Dr. Krausher, "it took a long time" for the horse to become so malnourished. However, since being removed from the Morgans' care, the horse has "definitely improved."

{¶ 23} In addition, Meg Stephenson, the executive director for the Butler County Humane Society, testified the horse has drastically improved since its removal from the Morgans' property. As Stephenson testified regarding her own observations of the horse:

> What I saw on March 25th was a very thin horse and isolated and didn't really have much life in it and much energy to it.
>
> The horse that I saw this morning is very different. It's very filled out. You can no longer see the ribs. And the hipbones do not protrude. The horse has a shine to its coat, and the horse is affiliating and it's up to the front of the stall, greeting – has an energy to it. It's a very different energy coming from the horse now than what I saw on the 25th.

Moreover, when asked what it took to get the horse into that condition, Stephenson testified that "[a]ll that it has taken is food to get the horse to be in the condition it is now."

{¶ 24} Furthermore, Chief Holmes, a certified horse abuse investigator, testified that although there was hay in the horse's stall, the hay had likely only been there for a day or less. Chief Holmes also testified that while there was some grain found in the barn, the amount of grain available would be only a fraction of what would normally be given during a single morning feeding. Chief Holmes' testimony also revealed that the grain bag was covered in dust and cobwebs signifying it had not been moved in some time.

{¶ 25} Furthermore, Chief Holmes testified there were teeth marks on the horse's stall indicating the horse had been chewing on the wood – a behavioral issue referred to as "cribbing" – that starved horses tend to exhibit if they are not getting enough food. As Chief Holmes testified, "[t]hey will grab hold of [the wood], and they will actually suck in the air and it expands into their belly, and kind of gives them that fat full feeling when they are hungry." Chief Holmes also testified that the horse's testicles rescinded into its body, something which

is generally seen only in starved horses.

{¶ 26} Continuing, when asked her expert opinion regarding the cause of the horse's poor condition, Chief Holmes testified as follows:

> Q: Now, viewing this horse, do you have an opinion as to the cause of its thinness?
>
> A: Yes.
>
> Q: What is that opinion?
>
> A: My opinion is that it hasn't been receiving good, sufficient quantities of hay and water.
>
> Q: And do you have an opinion as to how long it's been since it was receiving good quality food?
>
> A: Yes. I would say months, at least two months.

According to Chief Holmes, now that the horse has been removed from the Morgans' property and receiving the proper amounts of food and water, the horse "looks 100 times different back to what he normally looks in a matter of two or three months." The state also introduced a number of pictures of the horse evidencing the horse's radical transformation since being removed from the Morgans' property.

{¶ 27} After a thorough review of the record, we find the state presented overwhelming, uncontroverted evidence indicating the horse was on the verge of death due to the lack of sufficient food and water while confined to the Morgans' property and under the Morgans' care. *See, e.g., State v. Nichols*, 4th Dist. Hocking No. 07AP10, 2007-Ohio-1327, ¶ 16-19 (finding cruelty to animals conviction was supported by sufficient evidence where state presented evidence indicating appellant's horses were on the verge of starvation); *State v. Sheets*, 112 Ohio App.3d 1, 9 (4th Dist.1996) (finding cruelty to animals conviction was supported by sufficient evidence where state presented evidence indicating appellant's horse had not received sufficient food and was noticeably underweight). Again, since its removal

from the Morgans' property, the horse has thrived and undergone a near complete transformation into a normal and otherwise healthy animal. Therefore, as it relates to any claim that the state failed to prove that there was an insufficient amount of good wholesome food and water for the horse, the Morgans' argument is without merit and overruled.

{¶ 28} Next, as it relates solely to her, Debora argues her conviction must be reversed because "there was no testimony that she owned or cared for the horse." The state, however, did provide evidence that when Kenneth was speaking with Dr. Krausher on the phone on the morning of March 25, 2013, Dr. Kausher testified that he heard a female voice in the background say the downed horse was between 10 and 15 years old. The state also provided evidence that Debora referred to the horses as "her horses, my horses, our horses," when talking to officers during the execution of the search warrant.

{¶ 29} In addition, Chief Holmes testified that based on her interactions with the Morgans, she was under the impression that Debora was a co-owner of the horses. Moreover, although at trial she claimed to be a recluse who was confined to the house due to a medical condition, Debora explicitly testified that she had taken care of horses in the past and was able to walk, and in fact did walk, to the barn where the horse was kept. Viewing this evidence in a light most favorable to the state, we find the state did provide sufficient evidence to uphold Debora's cruelty to animals conviction. Debora's claim otherwise is therefore without merit and overruled.

{¶ 30} Accordingly, as the state provided sufficient evidence to support their convictions, and having found no merit to either of the arguments advanced by the Morgans herein, the Morgans' third assignment of error is overruled.

{¶ 31} Assignment of Error No. 4:

{¶ 32} THE JURY'S VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 33} In their fourth assignment of error, the Morgans argue their respective convictions for cruelty to animals were against the manifest weight of the evidence. We disagree.

{¶ 34} A manifest weight of the evidence challenge examines the "inclination of the greater amount of credible evidence, offered at a trial, to support one side of the issue rather than the other." *State v. Barnett*, 12th Dist. Butler No. CA2011-09-177, 2012-Ohio-2372, ¶ 14. To determine whether a conviction is against the manifest weight of the evidence, the reviewing court must look at the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Graham*, 12th Dist. Warren No. CA2008-07-095, 2009-Ohio-2814, ¶ 66. "While appellate review includes the responsibility to consider the credibility of witnesses and weight given to the evidence, 'these issues are primarily matters for the trier of fact to decide.'" *State v. Barnes*, 12th Dist. Brown No. CA2010-06-009, 2011-Ohio-5226, ¶ 81, quoting *State v. Walker*, 12th Dist. Butler No. CA2006-04-085, 2007-Ohio-911, ¶ 26. An appellate court, therefore, will overturn a conviction due to the manifest weight of the evidence only in extraordinary circumstances when the evidence presented at trial weighs heavily in favor of acquittal. *Id.*, citing *Thompkins*, 78 Ohio St.3d at 387.

{¶ 35} The Morgans argue their respective convictions must be reversed because the jury "clearly relied on their emotions in this case and not on the evidence presented to them." However, although hearing testimony and seeing pictures regarding the horse's emaciated condition may have stirred up some emotions in the jury, as noted above, the state presented overwhelming, uncontroverted evidence that the horse was on the verge of death due to the lack of sufficient food and water while confined to the Morgans' property and under the

Morgans' care.  In turn, the jury's findings of guilt simply cannot be said to be against the manifest weight of the evidence.  *See, e.g., State v. Kilburn*, 12th Dist. Warren No. CA96-12-130, 1998 WL 142412, *7 (Mar. 30, 1998) (finding cruelty to animals conviction was not against the manifest weight of the evidence where the state presented evidence indicating appellants' horses and other animals "had been without food and water for an unknown and an unreasonable length of time");  *State v. Leslie*, 4th Dist. Hocking Nos. 10CA17 and 10CA18, 2011-Ohio-2727, ¶ 19-23 (finding cruelty to animals conviction was not against the manifest weight of the evidence where the state presented evidence indicating appellants' horse and goats were not provided with sufficient food and water);  *State v. Dixon*, 6th Dist. Huron No. H-05-021, 2006-Ohio-2114, ¶ 23 (finding cruelty to animals conviction was not against the manifest weight of the evidence where the state presented evidence indicating appellant's horse was "deprived of food for an extended period of time").

{¶ 36} Moreover, although the Morgans alleged during trial that the horse's frail condition could be attributed to poisoning or foul play by some unknown third party, the Morgans provided absolutely no evidence to support such claims.  "[A] conviction is not against the manifest weight of the evidence simply because the jury believed the prosecution testimony."  *State v. Guzzo*, 12th Dist. Butler No. CA2003-09-232, 2004-Ohio-4979, ¶ 13, quoting *State v. Zentner*, 9th Dist. Wayne No. 02CA0040, 2003-Ohio-2352, ¶ 21.  Therefore, because their respective convictions were not against the manifest weight of the evidence, and finding no merit to either of the arguments advanced by the Morgans herein, the Morgans' fourth assignment of error is overruled.

{¶ 37} Assignment of Error No. 1:

{¶ 38} APPELLANTS' CONSTITUTIONAL RIGHTS TO A FAIR TRIAL WERE VIOLATED DUE TO THE ADMISSION OF IMPROPER EVIDENCE OF PRIOR BAD ACTS.

{¶ 39} In their first assignment of error, the Morgans argue the trial court erred by

admitting so-called "other acts" evidence contrary to Evid.R. 404(B) as it relates to two prior allegations of animal cruelty levied against them in regards to their horses in 2008 and 2010. We disagree.

{¶ 40} "Evidence that an accused committed a crime other than the one for which he is on trial is not admissible when its sole purpose is to show the accused's propensity or inclination to commit crime or that he acted in conformity with bad character." *State v. Carlton*, 9th Dist. Lorain No. 12CA010219, 2013-Ohio-2788, ¶ 19, quoting *State v. Williams*, 134 Ohio St.3d 521, 2012-Ohio-5695, ¶ 15. In turn, pursuant to Evid.R. 404(B), evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that a person acted in conformity therewith on a particular occasion. *State v. Hart*, 12th Dist. Warren No. CA2008-06-079, 2009-Ohio-997, ¶ 11. Such evidence, however, is permitted for other purposes, including proof of motive, opportunity, intent, preparation, plan, knowledge, identity, of the absence of mistake or accident. *State v. Thomas*, 12th Dist. Butler No. CA2012-11-223, 2013-Ohio-4327, ¶ 22.

{¶ 41} Generally, "[t]he admission of other-acts evidence under Evid.R. 404(B) lies within the broad discretion of the trial court, and a reviewing court should not disturb evidentiary decisions in the absence of an abuse of discretion that has created material prejudice." *State v. Vore*, 12th Dist. Warren No. CA2011-08-093, 2012-Ohio-2431, ¶ 40. In this case, however, the Morgans never raised any objection to this evidence at trial, thereby waiving all but plain error on appeal. *State v. Cox*, 12th Dist. Clermont No. CA2008-03-028, 2009-Ohio-928, ¶ 51. Pursuant to Crim.R. 52(B), an alleged error constitutes plain error only if the error is obvious and but for the error, the outcome of the trial clearly would have been different. *State v. Blankenburg*, 197 Ohio App.3d 201, 2012-Ohio-1289, ¶ 53 (12th Dist.), citing *State v. Lang*, 129 Ohio St.3d 512, 2011-Ohio-4215, ¶ 108. Notice of plain error is to be taken with the utmost caution, under exceptional circumstances, and only to prevent a

manifest miscarriage of justice. *State v. Freeze*, 12th Dist. Butler No. CA2011-11-209, 2012-Ohio-5840, ¶ 30.

{¶ 42} The Morgans argue the state improperly elicited testimony regarding the two prior allegations of animal cruelty levied against them "to show that their current actions were in conformity with their prior bad acts." This evidence, however, was not used in such a fashion. Rather, we find the alleged "other acts" evidence was properly used to prove, among other things, their knowledge and the absence of mistake or accident. The admission of this evidence was not error, let alone plain error, requiring their respective convictions be reversed. In so holding, we once again note the fact that the state presented overwhelming, uncontroverted evidence that the horse was on the verge of death due to the lack of sufficient food and water while confined to the Morgans' property and under the Morgans' care. Therefore, the Morgans' first assignment of error is overruled.

{¶ 43} Assignment of Error No. 2:

{¶ 44} THE TRIAL COURT VIOLATED APPELLANTS' RIGHT TO A FAIR TRIAL WHEN IT DID NOT GIVE A LIMITING INSTRUCTION IN REGARDS TO PRIOR BAD ACTS EVIDENCE THAT WAS PRESENTED TO THE JURY.

{¶ 45} In their second assignment of error, the Morgans argue the trial court erred by failing to provide a limiting instruction to the jury in regards to the so-called "other acts" evidence addressed above. The Morgans, however, never requested the trial court to provide a limiting instruction to the jury in regards to this evidence, thereby once again waiving all but plain error on appeal. As noted previously, pursuant to Crim.R. 52(B), an alleged error constitutes plain error only if the error is obvious and but for the error, the outcome of the trial clearly would have been different. *Blankenburg*, 2012-Ohio-1289 at ¶ 53, citing *Lang*, 2011-Ohio-4215 at ¶ 108.

{¶ 46} Based on the overwhelming evidence of their guilt, we find the trial court's

failure to provide a limiting instruction does not rise to the level of plain error. In turn, although we find it may have been better practice for the trial court to provide the jury with a limiting instruction as the Morgans suggest, we simply cannot say that the outcome of the trial would have been different. Rather, the trial court's failure to provide the jury with a limiting instruction was, at worst, harmless error. A finding of harmless error is appropriate where there is "overwhelming evidence of guilt" or "some other indicia that the error did not contribute to the conviction." *State v. Sims*, 12th Dist. Butler No. CA2007-11-300, 2009-Ohio-550, ¶ 34, quoting *State v. Ferguson*, 5 Ohio St.3d 160, 166 (1983), fn. 5. Therefore, the Morgans' second assignment of error is overruled.

{¶ 47} Assignment of Error No. 6:

{¶ 48} APPELLANTS' FEDERAL AND STATE CONSTITUTIONAL RIGHTS TO A FAIR TRIAL WERE VIOLATED BY PROSECUTORIAL MISCONDUCT.

{¶ 49} In their sixth assignment of error, the Morgans argue the state engaged in prosecutorial misconduct during its closing argument. We disagree.

{¶ 50} The state is entitled to a certain degree of latitude in making its concluding remarks. *State v. Layne*, 12th Dist. Clermont No. CA2009-07-043, 2010-Ohio-2308, ¶ 58. A court will find prosecutorial misconduct only when the remarks made during closing were improper and those improper remarks prejudicially affected substantial rights of the defendant. *State v. Elmore*, 111 Ohio St.3d 515, 2006-Ohio-6207, ¶ 62. "The focus of an inquiry into allegations of prosecutorial misconduct is upon the fairness of the trial, not upon the culpability of the prosecutor." *State v. Gray*, 12th Dist. Butler No. CA2011-09-176, 2012-Ohio-4769, ¶ 56, citing *State v. Vanloan*, 12th Dist. Butler No. CA2008-10-259, 2009-Ohio-4461, ¶ 32.

{¶ 51} A finding of prosecutorial misconduct will not be grounds for reversal unless the defendant has been denied a fair trial because of the prosecutor's prejudicial remarks. *State*

*v. English*, 12th Dist. Butler No. CA2013-03-048, 2014-Ohio-441, ¶ 55, citing *Layne* at ¶ 60. For a prosecutor's closing argument to be prejudicial, the remarks must be "so inflammatory as to render the jury's decision a product solely of passion and prejudice." *State v. Kirkland*, Slip Opinion No. 2014-Ohio-1966, ¶ 84, quoting *State v. Williams*, 23 Ohio St.3d 16, 20 (1986). "In order to determine whether the remarks were prejudicial, the prosecutor's closing argument is reviewed in its entirety." *State v. Tucker*, 12th Dist. Butler No. CA2010-10-263, 2012-Ohio-139, ¶ 43; *State v. Treesh*, 90 Ohio St.3d 460, 464 (2001).

{¶ 52} The Morgans did not object to the prosecutor's alleged improper comments during the state's closing argument. "A failure to object to alleged prosecutorial misconduct waives all but plain error." *State v. Lamb*, 12th Dist. Butler Nos. CA2002-07-171 and CA2002-08-192, 2003-Ohio-3870, ¶ 13. "Prosecutorial misconduct rises to the level of plain error if it is clear the defendant would not have been convicted in the absence of the improper comments." *State v. Israel*, 12th Dist. Butler No. CA2010-07-170, 2011-Ohio-1474, ¶ 43.

{¶ 53} The Morgans take exception to the following comment made by the state during its rebuttal closing argument:

> You are allowed to use your common sense in making your assessment, and it is when you are looking at these pictures of this horse, you see a horse that has been starved, you have to make a finding of guilty.

According to the Morgans, the state's comment was a misstatement of the law because "starvation or the appearance of starvation" is not an element of the offense of cruelty to animals in violation of R.C. 959.13(A)(1). However, although we agree the word "starvation" is not made a part of the offense, to "deprive of necessary sustenance" certainly is. The statute also makes it unlawful for anyone to "impound or confine an animal without supplying it during such confinement with a sufficient quantity of good wholesome food and water."

**{¶ 54}** As defined by Merriam-Webster's Online Dictionary and Thesaurus, the word "starvation" means "suffering or death caused by having nothing to eat or not enough to eat." The term "starve" has also been defined as "to deprive of nourishment." *Webster's Third New International Dictionary* (1993). The state's comment during its rebuttal closing argument that the horse "has been starved" is not a misstatement of the law, nor did such comment have the potential to confuse or mislead the jury in any way. Rather, this is merely a reasonable comment based on the evidence presented during the state's case-in-chief. Therefore, the Morgans' first argument is without merit and overruled.

**{¶ 55}** The Morgans also take exception to the state asking the jury to use its common sense when the case focused primarily on expert testimony. Yet, contrary to the Morgans' claim otherwise, the request for the jury to use its common sense has been determined to be neither prosecutorial misconduct nor plain error. *See State v. Betts*, 8th Dist. Cuyahoga No. 88607, 2007-Ohio-5533, ¶ 83, citing *Toledo v. Moore*, 6th Dist. Lucas No. L-02-1288, 2003-Ohio-2362, ¶ 28; *see also United States v. Ahee*, 5 Fed.Appx. 342, 356 (6th Cir.2001) (finding prosecutor's statement asking the jury to use its common sense in evaluating the case during closing argument was "well within the bounds of acceptable argument"). The Morgans' second argument is therefore likewise without merit and overruled.

**{¶ 56}** Finally, the Morgans argue the state improperly "played on the jurors' emotions" by requesting the jury to review the pictures of the horse. A prosecutor may not make excessively emotional arguments tending to inflame the jury's sensibilities. *State v. Israel*, 12th Dist. Butler No. CA2010-07-170, 2011-Ohio-1474, ¶ 45, citing *State v. Tibbetts*, 92 Ohio St.3d 146, 168 (2001). Nevertheless, although we acknowledge that the pictures of the horse could evoke an emotional response from the jury, this evidence clearly showed the animal in an emaciated condition while confined to the barn on the Morgans' property and in the Morgans' care. The state should not be precluded from referencing evidence properly

submitted as part of its case-in-chief merely because it may elicit an emotional response from the jury. To hold otherwise would place an unnecessary burden on the state when attempting to prosecute not only claims alleging animal cruelty, but a litany of other offenses as well, even though the probative value of the evidence does not substantially outweigh the danger of unfair prejudice under Evid.R. 403. Therefore, the Morgans' third argument is also without merit and overruled.

{¶ 57} Accordingly, having found no merit to any of the three arguments advanced by the Morgans under their sixth assignment of error, the Morgans' sixth assignment of error is overruled.

{¶ 58} Assignment of Error No. 7:

{¶ 59} APPELLANTS WERE DEPRIVED A FAIR TRIAL DUE TO A COMBINATION OF ERRORS THAT PERMEATED THE TRIAL.

{¶ 60} In their seventh assignment of error, the Morgans argue their respective convictions must be reversed pursuant to the cumulative error doctrine. "According to the cumulative error doctrine, 'a conviction will be reversed where the cumulative effect of errors in a trial deprives a defendant of the constitutional right to a fair trial even though each of the numerous instances of trial court error does not individually constitute a cause for reversal.'" *State v. McClurkin*, 12th Dist. Butler No. CA2007-03-071, 2010-Ohio-1938, ¶ 105, quoting *State v. Garner*, 74 Ohio St.3d 49, 64 (1995). Because we have found that all of their assignments of error are without merit and do not rise to the level of prejudicial error, the Morgans were not deprived of a fair trial and the cumulative error doctrine is inapplicable here. *See State v. Russell*, 12th Dist. Butler No. CA2012-03-066, 2013-Ohio-1381, ¶ 65. Therefore, the Morgans' seventh assignment of error is likewise without merit and overruled.

{¶ 61} Judgment affirmed.

RINGLAND, P.J., and HENDRICKSON, J., concur.