[Cite as *State v. Lunsford*, 2020-Ohio-965.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

|  |  |  |
|---|---|---|
| STATE OF OHIO/VILLAGE OF NEW MIAMI, | : | |
| | : | CASE NO. CA2019-07-116 |
| Appellee, | : | O P I N I O N<br>3/16/2020 |
| - vs - | : | |
| | : | |
| TRACY W. LUNSFORD, | : | |
| Appellant. | : | |

CRIMINAL APPEAL FROM HAMILTON MUNICIPAL COURT
Case No. 19CRB01900-A

Neal D. Schuett, City of Hamilton Prosecuting Attorney, 345 High Street, 2nd Floor, Hamilton, Ohio 45011, for appellee

Christopher Paul Frederick, 300 High Street, Suite 550, Hamilton, Ohio 45011, for appellant

**S. POWELL, J.**

{¶ 1} Appellant, Tracy W. Lunsford, appeals his conviction in the Hamilton Municipal Court for one count of assault. For the reasons outlined below, we affirm.

{¶ 2} On May 15, 2019, Officer Moebius with the New Miami Police Department filed a complaint charging Lunsford with assault in violation of R.C. 2903.13(A), a first-degree misdemeanor. As Officer Moebius alleged in the complaint, the charge arose after

Lunsford struck the purported victim, G.M., in the back of the head as G.M. tried to "leave a building" located in New Miami, Butler County, Ohio on May 1, 2019.

{¶ 3} On June 25, 2019, the matter was tried to the bench. During trial, the trial court heard testimony from three witnesses: G.M., Officer Moebius, and Lunsford.

{¶ 4} G.M. testified she had driven her daughter's car to work on the afternoon of May 1, 2019. Upon arriving at work, G.M. testified that she went inside where she made contact with Lunsford while Lunsford was in his office. G.M. testified that she and Lunsford were at that time in a "relationship." According to G.M., Lunsford was "angry" and "highly agitated" upon seeing her enter his office. G.M. testified that Lunsford then cussed her out, called her names, and told her to leave. G.M. testified that Lunsford also "let it be known that he hadn't taken his psych meds in three days." G.M. testified that this "scared [her] to death" because Lunsford was "destroying everything" in his office. When asked if she knew why Lunsford was upset with her, G.M. testified that she "wasn't there when he wanted [her] to be."

{¶ 5} G.M. testified that after Lunsford told her to leave, she exited Lunsford's office and went towards the building's main door. However, just prior to her exiting the building, G.M. testified that Lunsford "came after" her and punched her one time in the back of the head. According to G.M., Lunsford's punch to the head "hurt" and caused her to go down on her knees. After being punched, G.M. testified that she told Lunsford that she was going to call the police and press charges. G.M. testified that Lunsford then followed her outside. Once outside, G.M. testified that Lunsford picked up a "big rock," threw it at her daughter's car, and told her that he was going to put her, her children, and her grandchildren "in a house, nailing the windows shut and the doors and set it on fire." G.M. testified that she then drove across the street and called the police to report the assault.

{¶ 6} Officer Moebius testified that he was dispatched to the scene to investigate

the alleged assault. Upon his arrival, Officer Moebius testified that he contacted Lunsford and asked him if he had assaulted G.M. Officer Moebius testified that Lunsford responded by stating, "no, he did not assault her" and that "he doesn't hit women." Officer Moebius testified that he also made contact with G.M. later that day at the police station. According to Officer Moebius, although he did not observe any injury to G.M.'s person, G.M. was at that time still "very, very shaken" to the point where he "had to take her outside for her to smoke for her to * * * calm down enough to actually sit down and finish [writing her] statement." The written statement G.M. provided to Officer Moebius is consistent with G.M.'s trial testimony outlined above.[1]

{¶ 7} Contrary to G.M.'s testimony, Lunsford testified that G.M. had come into his office red in the face and screaming profanity at him. Upon seeing G.M. so mad, Lunsford testified that he told G.M. "you need to go ahead and leave and get out of the building." Lunsford also testified that he told G.M. that their relationship was over. Lunsford testified that G.M. then "snatched a hand full of keys" off his desk, told him that she was "going to tell the cops [he] hit [her]," and exited the building. Lunsford testified this entire incident lasted just a matter of "[s]econds. Long enough for [him] to tell her to get out of the building and not come back. To get out of [his] life and not ever come back." When asked if he followed G.M. out the door as she left, Lunsford testified that he "might have went three foot out the door to make sure she was leaving the property." Lunsford, however, denied ever punching or even touching G.M. As Lunsford testified, "I didn't touch her at all. I had no reason to."

{¶ 8} After both parties rested, the trial court issued its decision finding Lunsford

---

1. In her written statement, G.M. claimed that upon her arrival at work she went into Lunsford's office and sat down. G.M. claimed that Lunsford then came in and "started yelling and threatening to kill [her]" before punching her in the back of the head. G.M. also claimed that Lunsford "cleared the desk to try and scare [her]," followed her outside, and "threw a huge rock" that damaged her daughter's car. G.M. further claimed that Lunsford had threatened to kill her if she went to the police.

guilty as charged. In reaching this decision, the trial court noted that it had found G.M.'s testimony credible. As the trial court stated:

> I have to make a finding of [whose] version of what happened convinces me not only that's more accurate but it's proof beyond a reasonable doubt of an offense. But, I'd have to tell you in this case, when we heard [G.M.] testify, I believe her. She – she was not shaken in her testimony. When she testified I felt like we were hearing the truth from a person having gone through something that was very bad to go through. And when she testified I believe that she was telling the truth and I still do. And not just that, but I believe it to the point that I think it established proof beyond a reasonable doubt.

{¶ 9} This was in contrast to what the trial court found in regard to Lunsford's testimony. As the trial court stated:

> I compare that to the testimony of Mr. Lunsford whose testimony did not ring true to me and I do not think that uh – he was telling the truth about what happened that day. And so I'm going to make a finding of Guilty and the record I guess should be clear, it's solely on [G.M.'s] testimony.

{¶ 10} Upon finding Lunsford guilty, the trial court then sentenced Lunsford to 180 days in jail, with 173 of those days suspended, placed Lunsford on two years of community control, and ordered Lunsford to pay a $300 fine plus court costs. Lunsford now appeals his conviction, raising a single assignment of error for review. In his single assignment of error, Lunsford argues his conviction was against the manifest weight of the evidence. We disagree.

{¶ 11} A manifest weight of the evidence challenge examines the "inclination of the greater amount of credible evidence, offered at a trial, to support one side of the issue rather than the other." *State v. Barnett*, 12th Dist. Butler No. CA2011-09-177, 2012-Ohio-2372, ¶ 14. To determine whether a conviction is against the manifest weight of the evidence, this court must look at the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving the conflicts in

the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Wilks*, 154 Ohio St.3d 359, 2018-Ohio-1562, ¶ 168. This court will overturn a conviction due to the manifest weight of the evidence only in extraordinary circumstances when the evidence presented at trial weighs heavily in favor of acquittal. *State v. Morgan*, 12th Dist. Butler Nos. CA2013-08-146 and CA2013-08-147, 2014-Ohio-2472, ¶ 34.

{¶ 12} As noted above, Lunsford was convicted of assault in violation of R.C. 2903.13(A). Pursuant to that statute, "[n]o person shall knowingly cause or attempt to cause physical harm to another or to another's unborn." Lunsford argues his conviction must be reversed because the trial court "incorrectly weighed the evidence" and failed to "properly execute its fact-finding responsibilities." This is because, according to Lunsford, G.M. was not a credible witness. Lunsford supports this argument by noting that there was no corroborating evidence from any other witness to support G.M.'s testimony that Lunsford punched her in the back of the head. Lunsford also supports this claim by noting that the state did not submit any photographs or "eyewitness verification" regarding any injury G.M. may have suffered as the result of being punched in the head.

{¶ 13} However, contrary to Lunsford's claim, it is well established that corroborating evidence is not necessary in order to support a conviction for assault in violation of R.C. 2903.13(A). *Coshocton v. Alexander*, 5th Dist. Coshocton No. 77-CA-4, 1977 Ohio App. LEXIS 9148, *3 (Aug. 18, 1977) ("[t]here is no requirement of corroboration" to support a conviction for assault in violation of R.C. 2903.13[A]); s*ee, e.g., State v. Rainey*, 6th Dist. Lucas No. L-18-1270, 2019-Ohio-4618, ¶ 6 (assault conviction in violation of R.C. 2903.13[A] affirmed based on victim's testimony since "[t]here was no need for her testimony to be corroborated"). A victim's testimony alone is sufficient to sustain a conviction for assault in violation of R.C. 2903.13(A) if the victim's testimony proves all the

elements of the offense. *Columbus v. McDaniel*, 10th Dist. Franklin No. 09AP-879, 2010-Ohio-3744, ¶ 18. Such is the case here. That is to say G.M.'s testimony, if believed, was sufficient to establish each and every element of assault in violation of R.C. 2903.13(A) and convince the trial court of Lunsford's guilt beyond a reasonable doubt. *State v. Channels*, 2d Dist. Montgomery No. 19530, 2003-Ohio-3830, ¶ 14.

{¶ 14} The fact that the trial court believed G.M.'s testimony over that of Lunsford's does not render Lunsford's conviction against the manifest weight of the evidence. *See, e.g., State v. Smith*, 2d Dist. Montgomery No. 25462, 2013-Ohio-5345, ¶ 18 (assault conviction in violation of R.C. 2903.13[A] affirmed where victim testified appellant punched her in the face and head despite the victim's "admitted history of drug use, drug use on the day of the incident, lengthy criminal history, and conflicting details in her trial testimony"). A conviction is not against the manifest weight of the evidence simply because the trier of fact believed the testimony offered by the prosecution. *State v. Crossty*, 12th Dist. Nos. CA2017-01-003 thru CA2017-01-005, 2017-Ohio-8267, ¶ 68. This is because it is the trier of fact and not this court on appeal that makes determinations of credibility and the weight to be given to the evidence presented at trial. *State v. Erickson*, 12th Dist. Warren No. CA2014-10-131, 2015-Ohio-2086, ¶ 42, citing *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus. Therefore, because Lunsford's conviction was not against the manifest weight of the evidence, Lunsford's single assignment of error lacks merit and is overruled.

{¶ 15} Judgment affirmed.

HENDRICKSON, P.J., and RINGLAND, J., concur.