[Cite as *State v. Brantley*, 2022-Ohio-597.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO


| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-210258 |
| | | TRIAL NO. 20CRB-16577 |
| Plaintiff-Appellee, | : | |
| vs. | : | |
| DOMINIQUE BRANTLEY, | : | *O P I N I O N.* |
| Defendant-Appellant. | : | |


Criminal Appeal From:  Hamilton County Municipal Court

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal: March 2, 2022


*Andrew W. Garth*, City Solicitor, *William T. Horsley*, Chief Prosecuting Attorney, and *Philip Worsham*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Raymond T. Faller*, Hamilton County Public Defender, and *Krista Gieske*, Assistant Public Defender, for Defendant-Appellant.

**ZAYAS, Judge.**

{¶1} Dominique Brantley appeals his conviction for obstructing official business arguing that his conviction was not supported by sufficient evidence and was against the manifest weight of the evidence. For the following reasons, we affirm the trial court's judgment.

## Factual Background

{¶2} On August 29, 2020, Dominique Brantley was arrested and charged with obstructing official business, a misdemeanor of the second degree. Brantley filed a motion to suppress contending that Officer Joshua Condon did not have probable cause to arrest him. The motion to suppress was overruled, and the case proceeded to a bench trial.

{¶3} Condon testified that he was assigned to the Gun Crimes Task Force for the City of Cincinnati Police Department. Condon was patrolling in a marked police vehicle with his partner Officer Chiappone on West McMicken Avenue. While patrolling, he and Chiappone observed Rico Miller, who they confirmed had an open warrant for his arrest. Condon testified that when they circled back to Miller's location, they observed an unoccupied white Mercedes that was parked with its engine running in violation of the law.

{¶4} Condon stopped his cruiser next to the Mercedes and approached Miller. The officers arrested and handcuffed Miller. Before Condon could search Miller, Brantley approached and tried to retrieve a set of keys that were hooked onto Miller's belt loop. Condon told Brantley to back up and informed him that he could not take any property from Miller. Brantley continued to stand in the street, and approached Condon again. This time, Condon pushed him back. Condon testified

that Brantley's interference prevented him from conducting a thorough search of Miller before placing him in the cruiser.

{¶5}    Condon further testified that the officers would have secured the keys to the illegally parked Mercedes very quickly.   However, Brantley's interference required the officers to divert their attention from the car and delayed them from securing the vehicle.  Condon was concerned that someone could access and steal the car.  He was also concerned that there could be a firearm in the car.  Ordinarily, Condon would have run the license plate to determine the owner of the vehicle, but he could not recall doing so or having that information.

{¶6}    On cross-examination, Condon testified that there is a high incidence of stolen vehicles in that neighborhood because cars are left unoccupied and running. When Condon asked who owned the vehicle, Brantley responded, "It's none of your business."  Condon then informed him that it was a violation of the law to leave an unoccupied vehicle running.  Although Condon could not remember the state statute that prohibits a person from parking an unoccupied car with the engine running, he had issued citations under the statute before, and he would have looked up the statute to issue a citation.  Condon could not recall if he issued a citation for that violation.  Condon had the car towed after Brantley was arrested.

{¶7}    At that point, defense counsel played Condon's body-camera video.

{¶8}    The video shows Condon approach Miller, inform him of the arrest warrant, and handcuff him.  As Condon is tightening the handcuffs, he asked, "Whose car?"  Brantley responded, "None of your business."  Condon then said the car was on and unoccupied, and he would "figure it out in a minute."  Miller stated the car belonged to him, and then asked Condon if he was referring to the car across

the street. Condon said that he was referring to the Mercedes and asked Chiappone to secure the keys. Brantley, who was recording the stop with his phone, approached Miller and tried to take his keys. When Condon told Brantley to stop and step back, Chiappone, who was standing at the driver's side door of the Mercedes, returned to assist Condon. Then Condon patted down Miller and placed him into the cruiser.

{¶9} While both officers stood between the cruiser and the Mercedes, Brantley left the sidewalk and started walking toward the officers. Condon approached Brantley and told him to get out of the street. Condon warned him to stay away from their investigation or face arrest. As Chiappone opened the driver's side door of the Mercedes, Brantley again walked into the street and said, "That's my car." Condon placed him under arrest with the assistance of Chiappone. After Condon testified, the state rested.

{¶10} Brantley testified on his own behalf. Brantley testified that he was there to visit a friend, and he was recording the incident. Two cars were parked on the street with the engines running. The officers asked Miller if the second car belonged to him. Brantley admitted that he approached the officers when Chiappone opened the driver's door because he did not want the officer to enter his car.

{¶11} On cross-examination, Brantley admitted that his unoccupied car was running, and that the officer told him to stay on the sidewalk more than once. He left the sidewalk to prevent the officer from entering his vehicle. After Brantley testified, the defense rested.

{¶12} The trial court found Brantley guilty for interfering with the officer's attempts to enter the vehicle and turn off the engine.

{¶13} Brantley appeals, and in his sole assignment of error, he argues that the conviction was not supported by sufficient evidence and was contrary to the manifest weight of the evidence.

## Sufficiency and Manifest Weight

{¶14} In reviewing a challenge to the sufficiency of the evidence, a reviewing court must determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime had been proved beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶15} When considering a challenge to the weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created a manifest miscarriage of justice. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). Reversing a conviction as being against the manifest weight of the evidence should be reserved for only the most " 'exceptional case in which the evidence weighs heavily against the conviction.' " *State v. Martin*, 20 Ohio App.3d 172, 485 N.E.2d 717 (1st Dist.1983), paragraph three of the syllabus.

{¶16} To support a conviction for obstructing official business in violation of R.C. 2921.31(A), the state must prove the offender "(1) performed an act; (2) without privilege; (3) with purpose to prevent, obstruct, or delay the performance of a public official of any authorized act within the public official's official capacity; and (4) that hampered or impeded the performance of the public official's duties." *State v. Buttram*, 1st Dist. Hamilton No. C-190034, 2020-Ohio-2709, ¶ 10, citing *In re*

*Payne*, 1st Dist. Hamilton No. C-040705, 2005-Ohio-4849, ¶ 11.

{¶17} Brantley first contends that the state failed to establish that his conduct actually impeded the performance of the officers' duties. However, Condon testified that Brantley's interference required the officers to divert their attention from the car and delayed them from securing the vehicle. And the video confirms that Brantley's conduct impeded Chiappone from turning off the Mercedes on two separate occasions. The first arose when Brantley attempted to take the keys from Miller. Chiappone, who had gone to turn off the Mercedes, was required to leave the car and return to Condon due to Brantley's conduct. The second time occurred after Chiappone opened the driver's door to turn off the vehicle. Again, the officer was interrupted to assist Condon in arresting Brantley.

{¶18} Next, Brantley argues that the state failed to prove that his purpose was to impede an investigation. "A person acts purposely when it is the person's specific intention to cause a certain result[.]" R.C. 2901.22(A). "The purpose with which a person does an act is determined from the manner in which it is done, the means used, and all the other facts and circumstances in evidence." *In re Payne* at ¶ 15.

{¶19} Here, the video showed that Brantley repeatedly disregarded the officer's commands to stay on the sidewalk and stop interfering with their investigation. First, he approached Miller and tried to take his keys. Then Brantley went into the street and approached the officers after Condon secured Miller in the police cruiser. After Chiappone opened the door to the Mercedes, Brantley again went into the street. Finally, Brantley admitted that he left the sidewalk to prevent the officer from entering his vehicle. This record established that Brantley's

conviction was based upon his conscious decision to act contrary to Condon's instructions.

{¶20} Brantley further argues that he was privileged to approach and safeguard his car. However, Brantley did not initially admit that the vehicle belonged to him. When Condon asked who owned the car, Brantley responded, "None of your business." Moreover, Brantley did not have a privilege to interfere with the investigation of the illegally parked vehicle. The car was running and unattended in violation of R.C. 4511.661. Because the car was parked in violation of the law, the officer was privileged to enter the vehicle and remove the key pursuant to R.C. 4549.05, which states: "A law enforcement officer may remove the ignition key left in the ignition switch of an unlocked and unattended motor vehicle parked on a street or highway."

{¶21} Accordingly, the state presented sufficient evidence to establish that Brantley's conduct obstructed the officers from performing their duties. We cannot say that the trial court clearly lost its way and created a manifest miscarriage of justice. Consequently, we overrule the assignment of error.

## Conclusion

{¶22} We overrule the sole assignment of error and affirm the judgment of the trial court.

Judgment affirmed.

**MYERS, P.J.,** and **BOCK, J.,** concur.

Please note:
    The court has recorded its own entry this date.

7