[Cite as *State v. Olverson*, 2024-Ohio-5583.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO


STATE OF OHIO,                               :           APPEAL NO.   C-240169
                                                         TRIAL NO.    B-2303482
      Plaintiff-Appellee,           :

  vs.                                        :
                                                                  *O P I N I O N*
DANTE OLVERSON,                              :

      Defendant-Appellant.          :



Criminal Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed in Part, Sentence Vacated in Part, and Cause Remanded

Date of Judgment Entry on Appeal: November 27, 2024


*Melissa A. Powers*, Hamilton County Prosecuting Attorney, and *Keith Sauter*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Timothy J. McKenna*, for Defendant-Appellant.

**Bock, Presiding Judge.**

{¶1} After defendant-appellant Dante Olverson forced his way into a woman's apartment on two separate nights, the State charged him with four counts. The trial court found him guilty of all counts, merged allied offenses, and sentenced him to a total of 11-to-13.5 years in prison. On appeal, Olverson challenges his sentence and the sufficiency and manifest weight of the evidence.

{¶2} Olverson argues that the evidence fails to prove that he had a gun when he entered the apartment on the first night, or that he entered the victim's apartment with the intent to commit a criminal offense on the second night. But the victim's and her daughter's testimony established all elements of the offenses, and the trial court found their testimony credible. Nothing in the record undermines the trial court's credibility findings, so we will not disturb the trial court's finding Olverson guilty of the offenses.

{¶3} Olverson's consecutive sentences are not contrary to law because the trial court made the requisite R.C. 2929.14(C)(4) findings at the sentencing hearing and journalized its findings. But the trial court erred when it modified Olverson's aggregate sentence in its sentencing order because that modification was made outside of Olverson's presence. We vacate, in part, Olverson's sentences and remand the case to the trial court to announce Olverson's aggregate sentence in his presence.

## I. Factual and Procedural History

{¶4} After Olverson entered the victim's apartment on two separate nights in July 2023, the State charged him with aggravated burglary in violation of R.C. 2911.11(A)(1), aggravated burglary in violation of R.C. 2911.11(A)(2), felonious assault in violation of R.C. 2903.11(A)(1), and having a weapon while under a disability in violation of R.C. 2923.13(A)(3).

{¶5} At Olverson's bench trial, the victim testified that Olverson and the victim have three children together, including an infant that was born after Olverson's arrest. Although their relationship had ended, the victim allowed Olverson to stay in her apartment briefly to mend his relationship with his children. The victim lives on the second floor of a building with a balcony window, which Olverson shattered to gain access to the apartment. The victim and her daughter described two nights when Olverson entered the apartment through the balcony.

### July 16, 2023

{¶6} The victim's daughter was asleep and awoke to the sound of Olverson entering the apartment through the balcony. She investigated the noises and startled Olverson. Olverson made his way into the victim's bedroom, followed by the victim's daughter. The victim testified that she woke up with her daughter in her bedroom alerting her that Olverson was in the apartment.

{¶7} According to the victim, she "popped up" when she realized that Olverson was in her room and asked him why he was there. She told him to leave, but he "wanted to talk or whatever." As the victim ushered Olverson out of her apartment, she noticed a "chrome, black" gun with "a little green beam on it."

{¶8} The victim's daughter initially testified that Olverson woke the victim up and "shot the gun at the mirror," but later clarified that "he flashed a beam or something." She recalled a "black and gray" handgun with a green laser sight.

{¶9} After the victim's daughter left the room, the victim heard Olverson load a round into the chamber of the gun and begin looking for her daughter. But the victim's daughter had escaped the apartment and called 911. Roughly ten minutes later, Olverson left. The police arrived moments later.

**{¶10}** Olverson returned three nights later, around "3:00, 4:00ish in the morning." The victim woke up feeling "like I was being suffocated." Olverson was "standing on top of me, choking me." The victim punched Olverson in self-defense. This seemed to anger Olverson, who continued his attack. With one hand around her neck, Olverson struck the victim in the face with his fist. The victim screamed for help. Olverson "got up and ran out of [the] house." This attack left the victim with temporary vision problems and an injury that required stitches.

**{¶11}** The victim's daughter watched Olverson walk past her room on his way to the victim's room pounding his fist into his other hand. She heard Olverson attack the victim and the victim yell, "[S]o you're just going to hit me?" The victim's daughter heard "screaming" and "tussling."

**{¶12}** The victim had told her daughter that, if anything should happen, the victim's daughter and son should not intervene and instead "go get help." The victim's daughter took her brother out the back door and called the police. Olverson left before the police arrived at the scene. The victim had visible injuries and her medical records include photographs of the victim's bruised and swollen face.

**{¶13}** The trial court found Olverson guilty on all counts and explained that the State's witnesses were credible and "significantly probative on the issues at hand." The trial court imposed the following sentences: Count one, aggravated burglary—five to seven and one-half years; Count two, aggravated burglary—three to four years; specification to Count three—three years, served before and consecutively to Count two; Count three, felonious assault—merged with Count one; and Count four, having a weapon while under a disability—three years. The court determined that Counts two and four would run concurrently. The remainder of the sentences would run

consecutively.

**{¶14}** The trial court initially announced the aggregate sentence as "eight to ten-and-a-half years, plus a three-year gun specification, for a term of 11 to 13-and-a-half years." Later, it corrected that aggregate sentence and informed Olverson that the sentence was "eight to 12 years, plus a three-year gun spec, which makes it 11 to 12 years." But the sentencing entry reflects an "ELEVEN (11) YEARS TO THIRTEEN (13) YEARS, SIX (6) MONTH[]" aggregate sentence.

**{¶15}** Olverson appeals and raises three assignments of error.

## II. Analysis

### A. The weight and sufficiency of the evidence support Olverson's convictions

**{¶16}** Olverson's first and second assignments of error assert that his convictions were not supported by sufficient evidence and were contrary to the manifest weight of the evidence.

**{¶17}** Olverson combines his sufficiency and manifest-weight arguments. But the "sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different" legal concepts. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). Appellants must raise "an argument containing the contentions of the appellant with respect to each assignment of error for review and the reasons in support of the contentions." App.R. 16(A)(7). We do not create arguments if a "'litigant fails to develop one.'" *State v. Mounts*, 2023-Ohio-3861, ¶ 36 (1st Dist.), quoting *Marreez v. Jim Collins Auto Body, Inc.,* 2021-Ohio-4075, ¶ 4 (1st Dist.). Ohio courts may overrule assignments of error challenging the manifest weight of the evidence if the "argument pertains only to the sufficiency of the evidence." *See State v. Rollison,* 2021-Ohio-1556, ¶ 20 (collecting cases). With that said, we consider "all cognizable

contentions presented" in this case. *Mounts* at ¶ 36, quoting *Mareez* at ¶ 4.

1. Testimony established that Olverson had a gun on July 16

**{¶18}** In a sufficiency challenge, we must determine whether a reasonable fact finder could find that the State proved the elements of the offense beyond a reasonable doubt. *See State v. Brantley*, 2022-Ohio-597, ¶ 14 (1st Dist.). In doing so, we view the evidence in a light most favorable to the State. *Id.*

**{¶19}** For Olverson's conduct on July 16, the court convicted him of aggravated burglary with a firearm specification and having a weapon while under a disability. He argues that the state failed to prove that he had a firearm that night.

**{¶20}** The court convicted Olverson of aggravated burglary in violation of R.C. 2911.11(A)(2). Aggravated burglary prohibits "trespass in an occupied structure" by force, stealth or deception, "with purpose to commit in the structure . . . any criminal offense" when "[t]he offender has a deadly weapon or dangerous ordnance on or about the offender's person or under the offender's control." R.C. 2911.11(A)(2).

**{¶21}** The trial court also convicted Olverson of possessing a firearm while under a disability in violation of R.C. 2923.13(A)(3). Possessing a weapon while under a disability consists of knowingly acquiring, having, carrying, or using a firearm or dangerous ordnance when a person is "under indictment for or has been convicted of any felony offense involving illegal possession, use, sale, administration, distribution, or trafficking in any drug of abuse." R.C. 2923.13(A)(3).

**{¶22}** Olverson argues that the evidence merely proves that he had a green light. In support, he cites *State v. Brown*, 2019-Ohio-3349 (1st Dist.). In *Brown,* we held that the evidence was insufficient to prove that Brown had a gun. *Id.* at ¶ 1. We explained that "[p]retending that your finger is a gun for purposes of committing a robbery . . . prevent[s] a conviction for offenses dependent on actually having a

firearm." *Id.* at ¶ 1. In the surveillance footage, Brown pulled "his hand out from the bag without any weapon, held the bag open wide with both hands, and one of the witnesses peered into the bag (and never claimed to have seen a weapon)." *Id.*

**{¶23}** But here, the victim and her daughter testified that the green light came from a gun. They both described the gun as black and either chrome or grey, with a green laser sight. When that testimony is viewed in a light most favorable to the State, a reasonable trier of fact could find that the evidence proved that Olverson had a gun on July 16.

**{¶24}** Olverson also challenges the manifest weight of the evidence. A manifest-weight challenge requires us to review the record, weigh the evidence, consider witness credibility, and determine whether the trial court lost its way and created a manifest miscarriage of justice. *State v. Terry*, 2024-Ohio-2876, ¶ 42 (1st Dist.). Reversal is proper where the evidence weighs heavily against the conviction. *Id.*

**{¶25}** Olverson emphasizes the absence of any physical evidence of a gun. He appears to question the credibility of the victim and her daughter because the offenses occurred in a dark apartment. According to Olverson, that light could have "been a flashlight or cell phone."

**{¶26}** A conviction is not against the manifest weight of the evidence simply because inconsistent evidence was offered at trial. *See State v. Gatewood*, 2021-Ohio-3325, ¶ 69 (1st Dist.). When confronted with inconsistent evidence, the trier of fact is free to weigh the evidence and "'believe or disbelieve any of the testimony.'" *Id.*, quoting *State v. Shine-Johnson*, 2018-Ohio-3347, ¶ 65 (10th Dist.). The trial court found the victim's and her daughter's testimony credible. We defer to the trier of fact's credibility determinations "'because it is in the best position to gauge the witnesses' demeanor, gestures, and voice inflections, and to use these observations to weigh their

7

credibility.'" *Id.* at ¶ 46, quoting *State v. Hess*, 2021-Ohio-1248, ¶ 16 (4th Dist.). There is nothing in the record that demonstrates we should disregard the trial court's credibility determinations. The victim's and her daughter's testimony were not contradictory, vague, or equivocal. Both described a handgun with a green laser sight. The victim's black-and-chrome description is consistent with her daughter's black-and-grey description of the gun.

**{¶27}** Olverson stresses that the gun was never found. But lay testimony can establish a gun's existence and operability. *See In re D.W.*, 2020-Ohio-2707, ¶ 19 (1st Dist.). In this case, the witnesses testified that they saw the gun and provided nearly identical descriptions.

**{¶28}** In sum, the evidence was sufficient to convict Olverson of aggravated burglary in violation of R.C. 2911.11(A)(2) and possessing a firearm while under a disability in violation of R.C. 2923.13(A)(3). And Olverson's convictions are not contrary to the manifest weight of the evidence.

    2. <u>Olverson's actions on July 19 indicate an intent to cause harm</u>

**{¶29}** Olverson challenges the sufficiency and manifest weight of the evidence supporting his aggravated-burglary conviction based on his actions on July 19. For that night's conduct, the trial court convicted Olverson of aggravated burglary in violation of R.C. 2911.11(A)(1). The statute prohibits a person from, through force, stealth, or deception, trespassing in an occupied structure when another person is present, with purpose to commit a criminal offense and "inflict[ing] . . . physical harm on another."

**{¶30}** Olverson limits his argument to the intent element of the offense. He claims that the State failed to prove that he entered the victim's apartment with the intent to commit a criminal offense.

**{¶31}** R.C. 2901.22(A) defines purpose as a "specific intent[] to cause a certain result." Purpose can be inferred from "'the manner in which [the act] is done, the means used, and all other facts and circumstances in evidence.'" *State v. Brantley*, 2022-Ohio-597, ¶ 18 (1st Dist.), quoting *In re Payne,* 2005-Ohio-4849, ¶ 15 (1st Dist.).

**{¶32}** Olverson points to several circumstances on the night of July 19 to argue that he entered the victim's apartment to talk. But the victim's daughter watched as Olverson walked to the victim's bedroom with a clenched fist. And the victim woke up to Olverson strangling and punching her.

**{¶33}** A rational fact finder could find that these circumstances show that Olverson entered the victim's apartment for the purpose of assaulting her. The evidence is sufficient to convict Olverson of aggravated burglary for his conduct on July 19.

**{¶34}** Turning to his manifest-weight argument, Olverson points to the victim's prior inconsistent statements contained in her medical records, which suggest that the victim opened the door for Olverson on July 19. Olverson emphasizes the fact that he was trying to mend his relationship with his children and knew the victim was pregnant with his child.

**{¶35}** These circumstances could support Olverson's claim that he simply wanted to talk. But the victim disputed the accuracy of her statements contained in the medical records. And again, the circumstances established by the testimony—which the trial court deemed credible–create a reasonable inference that Olverson entered the victim's apartment with the intent to cause her harm. The victim's testimony is corroborated by her daughter's testimony and the photographs in her medical records.

**{¶36}** The trial court did not lose its way and create a manifest miscarriage of justice when it found Olverson guilty of aggravated burglary for his conduct on July

19. And his conviction was supported by sufficient evidence. We overrule Olverson's first and second assignments of error.

### B. The trial court must announce Olverson's sentence with him present

**{¶37}** In his third assignment of error, Olverson argues that the trial court failed to make the requisite findings to impose consecutive sentences under R.C. 2929.14(C)(4). Plus, he argues, the trial court incorrectly entered an 11-to-13-year-and-six-month sentence in its sentencing entry, because it announced an aggregate 11-to-12-year sentence at the sentencing hearing.

#### 1. The trial court's findings support Olverson's consecutive sentences

**{¶38}** To modify or vacate Olverson's sentence under R.C. 2953.08(G)(2), this court "must clearly and convincingly find that the sentence is contrary to law or that the record does not support the trial court's findings." *State v. White*, 2023-Ohio-4391, ¶ 16 (1st Dist.).

**{¶39}** Consecutive sentences are an exception to the rule that multiple sentences presumptively are served concurrently. *State v. McKinney*, 2022-Ohio-849, ¶ 11 (1st Dist.). A trial court must justify the imposition of consecutive sentences with findings under R.C. 2929.14. R.C. 2929.14(C)(4) permits the trial court to impose consecutive sentences if it makes three findings. First, the court must find that consecutive sentences are "necessary to protect the public from future crime or to punish the offender." R.C. 2929.14(C)(4). Second, it must find "that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public." *Id.* Third, it must find one of three circumstances present in the case. Relevant here, consecutive sentences are justified if "[t]he offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender." R.C.

2929.14(C)(4)(c).

**{¶40}** The trial court described in detail the pain and suffering that Olverson caused. It determined that consecutive sentences were necessary to protect the public and punish Olverson. And it explained that consecutive sentences were not disproportionate to the severity of Olverson's offenses or the danger he poses to the public. The State recounted Olverson's criminal history, which includes 12 felony convictions. The trial court found that this history shows that consecutive sentences are necessary to protect the public. The trial court journalized its findings.

**{¶41}** The trial court made the necessary findings to justify its imposition of consecutive sentences, and those sentences are not contrary to law.

2. <u>The trial court erred by modifying the aggregate sentence outside of Olverson's presence</u>

**{¶42}** Olverson asserts that the trial court's calculation of his aggregate sentence was confusing. Under R.C. 2929.144(B)(2), a trial court imposing consecutive indefinite sentences must "add all of the minimum terms" with "all of the definite terms," and then determine the maximum term, "which is equal to the total of those terms so added by the court plus fifty per cent of the longest minimum term or definite term for the most serious felony being sentenced."

**{¶43}** At the sentencing hearing, the trial court stated that Olverson's sentence was a five-year minimum for Count one, a three-year minimum for Count two, and three years for the gun specification on Count two. The trial court first correctly announced Olverson's aggregate "term of 11 to 13-and-a-half years in the Ohio Department of Corrections." But minutes later, the trial court explained "once I calculate everything, the sentence is . . . 11 to 12 years." Then, in its sentencing entry, it sentenced him to an aggregate 11-to-13-and-a-half years in prison.

**{¶44}** Under Crim.R. 43(A), a defendant must be present when the trial court imposes its sentence. While Olverson was present at the sentencing hearing when the trial court correctly announced his aggregate term of 11 to 13-and-a-half years, the trial court adjusted his aggregate sentence and incorrectly announced an 11-to-12-year aggregate sentence. And then in the sentencing entry, the trial court reverted his aggregate sentence back to the 11-to-13-and-a-half-year aggregate sentence, modifying Olverson's sentence outside of his presence.

**{¶45}** But any modification of a sentence must be made in the presence of the defendant. *See State v. Railey*, 2012-Ohio-4233, ¶ 21 (1st Dist.) (collecting First District cases). A journalized sentence is contrary to law when it differs from the sentence announced at the sentencing hearing. *State v. Jackson*, 2014-Ohio-5008, ¶ 22 (1st Dist.).

**{¶46}** We sustain Olverson's third assignment of error in part, vacate his aggregate sentence, and remand the case to the trial court to hold a sentencing hearing. *See Railey* at ¶ 23.

### III. Conclusion

**{¶47}** We overrule Olverson's first and second assignments of error. We sustain, in part, Olverson's third assignment of error, vacate his aggregate sentence, and remand the case to the trial court to announce Olverson's aggregate sentence in his presence.

Judgment accordingly.

**CROUSE** and **WINKLER, JJ.,** concur.


Please note:

The court has recorded its entry on the date of the release of this opinion.