[Cite as *State v. Sawyer*, 2025-Ohio-5834.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

STATE OF OHIO,             :        APPEAL NO.    C-250158
                                              TRIAL NO.     B-2305779

      Plaintiff-Appellee,          :

   vs.                                 :

GARY SAWYER,             :            *JUDGMENT ENTRY*

      Defendant-Appellee.      :

This cause was heard upon the appeal, the record, and the briefs.

For the reasons set forth in the Opinion filed this date, the judgment of the trial court is affirmed.

Further, the court holds that there were reasonable grounds for this appeal, allows no penalty, and orders that costs be taxed under App.R. 24.

The court further orders that (1) a copy of this Judgment with a copy of the Opinion attached constitutes the mandate, and (2) the mandate be sent to the trial court for execution under App.R. 27.

**To the clerk:**

**Enter upon the journal of the court on 12/31/2025 per order of the court.**

**By:**_____
       **Administrative Judge**

[Cite as *State v. Sawyer*, 2025-Ohio-5834.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | | |
|---|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. | C-250158 |
| | | TRIAL NO. | B-2305779 |
| Plaintiff-Appellee, | : | | |
| vs. | : | | |
| GARY SAWYER, | : | *O P I N I O N* | |
| Defendant-Appellant. | : | | |

Criminal Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: December 31, 2025

*Connie Pillich*, Hamilton County Prosecuting Attorney, and *Candace Crear,* Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Timothy J. McKenna*, for Defendant-Appellant.

**BOCK, Judge.**

{¶1} Defendant-appellant Gary Sawyer appeals his felonious-assault conviction. In four assignments of error, he challenges the sufficiency and weight of the State's identification evidence, the constitutionality of his attorney's representation, and his sentence. Unpersuaded, we overrule his assignments of error and affirm his conviction.

{¶2} First, the victim's identification testimony was sufficient to identify Sawyer as her assailant and the perpetrator of the offense. Moreover, a conviction is not contrary to the weight of the evidence simply because the victim's testimony was inconsistent at times when those inconsistencies do not contradict the State's theory of the case.

{¶3} Second, Sawyer's ineffective-assistance claims, based on trial counsel's failure to investigate and present evidence, require evidence outside of the record and cannot be reviewed on direct appeal.

{¶4} Finally, Sawyer's maximum sentence is not contrary to law because the record does not show that the trial court failed to consider the relevant statutory factors and principles.

## I. Factual and Procedural History

{¶5} A day of work culminated in an argument between Sawyer and the victim ("S.E.") at a United Dairy Farmers ("UDF") store. Moments later S.E. was attacked as she walked on a nearby street. The State charged Sawyer with two counts of felonious assault in violation of R.C. 2903.11(A)(1) and (2).

{¶6} The State's first attempt to prosecute Sawyer for attacking S.E. resulted in a deadlocked jury. After a second jury was empaneled for Sawyer's retrial, the trial court granted Sawyer's request for new counsel.

## A. *Sawyer's retrial*

**{¶7}** The State retried Sawyer and presented testimony from S.E., her mother, the responding officer, and the UDF manager. It also presented photos of S.E.'s injuries and bodycam footage.

**{¶8}** S.E. had known Sawyer and his mother for roughly 18 years. S.E. owned a residential cleaning business and had hired Sawyer to help with a "clean out." On the morning of the job, Sawyer, who was driving his mother's white pickup truck, picked up S.E. from her mother's house and drove her to the jobsite.

**{¶9}** S.E. testified that as the day progressed, Sawyer became increasingly hostile and threatening. According to S.E., Sawyer and S.E. returned to her mother's house to unload refrigerators. After S.E. struggled to move the refrigerators, Sawyer became angry and called S.E. "weak." As Sawyer drove S.E. to a nearby UDF, he became "verbally angry," threatened S.E., and called her "the B-word." S.E. testified that Sawyer remarked "how he should have brought his gun."

**{¶10}** At the UDF, Sawyer followed S.E. into the store and the two continued arguing. A UDF employee testified[1] that because S.E. and Sawyer had caused a "small commotion," she told Sawyer and S.E. to leave the store. According to S.E., Sawyer threatened "to bust [her] mom in the face."

**{¶11}** S.E. testified that she saw Sawyer leave the UDF parking lot but did not notice in which direction Sawyer went. Concerned about her mother's safety, S.E. called her mother to warn her about Sawyer's threat. S.E.'s mother testified that S.E. seemed "scared" and warned that Sawyer "was on his way to . . . bash me in my face."

---

[1] The UDF employee testified at Sawyer's first trial, but did not respond to a subpoena for Sawyer's retrial. The trial court admitted the transcript of the UDF employee's prior testimony into the evidence.

S.E.'s mother saw what she believed was Sawyer's white truck parked near her home after S.E.'s call, but also testified that Sawyer never came to her house that night.

1. *The attack*

{¶12}   Although it was dark outside, S.E. decided to take a shortcut from the UDF to her mother's house. As she walked past a streetlight on Orchard Street, S.E. noticed a "silhouette" carrying a pole. She recalled seeing "a shadow figure [] resembling Mr. Sawyer." As he got closer, she "recognize[d] the figure more and more" as Sawyer, and she recognized the pole as part of a bedframe from the job earlier that day. S.E., still on the phone, told her mother, "[Sawyer] is behind me" and that she was "going to die."

{¶13}   S.E. explained that her assailant said, "Shut up, bitch," and pushed her to the ground. She recognized Sawyer's "face" and "his voice" at this point. S.E. was "positive" that it was Sawyer. During the attack, S.E. covered her head to protect herself from the metal pole and eventually "play[ed] dead." All told, the attack left S.E. with a broken arm that required surgery, a bruised hand, and a scraped knee.

2. *The investigation*

{¶14}   S.E. returned to the UDF store and, according to the UDF employee, reported that the "man she came in with" had attacked her. The UDF employee called 9-1-1 and relayed that information to the dispatcher. The State played the responding officer's bodycam footage at the trial, which showed S.E. telling the officer that Sawyer had attacked her and threatened her mother.

{¶15}   While under the influence of pain killers at the hospital, S.E. misidentified a white truck in a photograph as Sawyer's truck. Law enforcement did not search that truck or speak to its owner. Law enforcement also did not search the truck Sawyer had been driving that day. Law enforcement, however, searched a

5

database of license-plate-reader photographs, which captured Sawyer's truck entering the neighborhood before the attack, but not after.

{¶16} According to the responding officer, UDF did not respond to his requests for security footage. Law enforcement did not try to secure doorbell footage of the attack. While the attack happened near a business, that business had closed and had no working security cameras. And while S.E.'s phone was stolen during the attack, that phone "only works on Wi-Fi" and was untraceable.

{¶17} The jury found Sawyer guilty of both felonious-assault counts. The trial court merged the counts and imposed an indefinite eight-to-12-year sentence.

## II. Analysis

{¶18} On appeal, Sawyer challenges his conviction in four assignments of error. In his first two assignments of error, which he argues together, Sawyer disputes the sufficiency and weight of the State's evidence identifying him as S.E.'s assailant. Next, he argues that his trial counsel was constitutionally ineffective for not calling an expert witness. Finally, he asserts that the record does not support a maximum sentence. We overrule the assignments of error and affirm the trial court's judgment.

### A. *The State's evidence identified Sawyer as S.E.'s assailant*

{¶19} In his first and second assignments of error, Sawyer raises combined sufficiency and manifest-weight challenges. Sawyer recites the relevant standards of review for sufficiency and manifest-weight challenges, implicitly recognizing that "the 'sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different' legal concepts." *State v. Olverson*, 2024-Ohio-5583, ¶ 17 (1st Dist.), quoting *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). As these two concepts are separate, "it is not proper to combine sufficiency and manifest weight arguments in one assignment of error." *State v. Skanes*, 2025-Ohio-4462, ¶ 60 (8th

Dist.) (disregarding part of an assignment of error challenging the manifest weight of the evidence where the appellant failed to separately argue that his convictions were against the manifest weight of the evidence). Although Sawyer combined these two assignments of error, we address his sufficiency and manifest-weight arguments separately.

1. *S.E.'s testimony was sufficient to prove identity*

{¶20} By challenging the sufficiency of the evidence, Sawyer "is arguing that the State presented inadequate evidence on an element of the offense to sustain the verdict as a matter of law." *State v. Mosley*, 2025-Ohio-4448, ¶ 52 (1st Dist.). On appeal, we view the evidence in a light most favorable to the State and determine whether a reasonable juror could have found that the State's evidence proved every element of the offense beyond a reasonable doubt. *Id.*

{¶21} Sawyer was convicted of felonious assault under R.C. 2903.11(A)(1). Under R.C. 2903.11(A)(1), a person commits felonious assault if he "knowingly . . . cause[s] serious physical harm to another."

{¶22} Sawyer does not dispute that *someone* caused serious physical harm to S.E. Rather, he argues that the evidence failed to prove that *he* perpetrated the attack.

{¶23} The State carries the burden to prove beyond a reasonable doubt that the person accused of a crime was the person who committed the crime. *See State v. Akins*, 2024-Ohio-1491, ¶ 35 (1st Dist.). A perpetrator's identity may be proven "through direct or circumstantial evidence." *State v. Saleem*, 2024-Ohio-3162, ¶ 51 (1st Dist.); *see State v. Thomas*, 2022-Ohio-2218, ¶ 7 (1st Dist.).

{¶24} In this case, the State presented direct evidence identifying Sawyer as the perpetrator of the attack. S.E. unequivocally testified that Sawyer attacked her.

S.E.'s history and familiarity with Sawyer enabled her to recognize his face as he approached the streetlight, and his voice as he told her to "[s]hut up."

**{¶25}** Sawyer argues that there was no evidence to corroborate S.E.'s eyewitness and earwitness identification of Sawyer and challenges several pieces of circumstantial evidence. But the State need not present corroborating evidence to support an assault conviction. *State v. Lunsford*, 2020-Ohio-965, ¶ 13 (12th Dist.). Indeed, "[a] victim's testimony alone is sufficient to sustain a conviction for assault in violation of R.C. 2903.13(A) if [S.E.]'s testimony proves all the elements of the offense." *Id.*

**{¶26}** We hold that S.E.'s identification testimony was sufficient to prove that Sawyer was her assailant. We overrule the first assignment of error.

2. *The jury's verdict is not contrary to the weight of the evidence*

**{¶27}** Sawyer's arguments involving circumstantial evidence and S.E.'s testimony raise credibility issues better suited for a manifest-weight review.

**{¶28}** By asserting that his conviction is against the manifest weight of the evidence, Sawyer is arguing that the State failed to carry its burden of persuasion. *Eastley v. Volkman*, 2012-Ohio-2179, ¶ 19. Even when the State's evidence in support of a conviction is constitutionally sufficient, a conviction nevertheless may be contrary to the manifest weight of the evidence if "'"the *greater amount of credible evidence*"'" disproves an element of the offense. (Emphasis in *Thompkins*.) *Id.* at ¶ 12, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), quoting *Black's Law Dictionary* (6th Ed. 1990). We may reverse a conviction as contrary to the manifest weight of the evidence if our independent review of the record reveals that "the jury clearly lost its way and created a manifest miscarriage of justice." *Saleem*, 2024-Ohio-3162, at ¶ 42

(1st Dist.). As part of that review, we "weigh the evidence and all reasonable inferences[] and consider the credibility of all witnesses." *Id.*

{¶29} Circumstantial evidence is ""proof of facts or circumstances by direct evidence from which [the factfinder] may reasonably infer other related or connected facts that naturally flow according to the common experience of people."" *State v. Armstead*, 2021-Ohio-4000, ¶ 13 (1st Dist.), quoting *State v. Barnthouse*, 2019-Ohio-5209, ¶ 16 (1st Dist.), quoting *State v. Shabazz,* 2016-Ohio-1055, ¶ 18, quoting Ohio Jury Instructions, CR § 409.01(4) (Rev. Aug. 17, 2011). Circumstantial evidence is inherently as probative as direct evidence. *Armstead* at ¶ 12.

{¶30} Sawyer points to inconsistencies and circumstantial evidence to argue that he was not S.E.'s assailant. He contends that "there was no threat to [S.E.'s] mother" because S.E.'s mother testified that Sawyer never arrived at her house. Sawyer claims that S.E. contradicted herself when she testified that Sawyer turned onto Ohio Avenue, and that she did not see Sawyer's truck exit from the parking lot. She also testified that Sawyer attacked her with a pole that was in his truck but did not see Sawyer physically grab the pole from his truck. Sawyer also points out that S.E. took a shortcut to beat Sawyer to her mother's house premised on Sawyer's ignorance of the route. So, Sawyer argues, he could not simultaneously lack knowledge of S.E.'s whereabouts and carry out an attack on S.E.

{¶31} But the threat, Sawyer's exit, the pole, and S.E.'s route are not inconsistent with the State's theory of the attack or S.E.'s account—that Sawyer lured S.E. out of the UDF by threatening her mother and then attacked S.E. It was reasonable for S.E. to assume or infer that Sawyer turned onto Ohio Avenue because that is the most direct route to S.E.'s mother's house. And it was reasonable for her to assume or infer that Sawyer grabbed the pole from his truck because S.E. recognized

that pole as part of a bedframe that she had loaded into his truck earlier in the day. Finally, S.E. reasonably could have inferred that Sawyer saw her cross Ohio Avenue to Orchard Avenue before the attack.

**{¶32}** Sawyer notes that S.E. and her mother misidentified a white truck as Sawyer's truck. But both Sawyer's truck and the misidentified truck are white trucks, and S.E. was under the influence of pain killers when she identified the truck as belonging to Sawyer.

**{¶33}** Convictions are not contrary to the manifest weight of the evidence simply because witnesses provided inconsistent testimony at trial. *Olverson*, 2024-Ohio-5583, at ¶ 26 (1st Dist.). Rather, the "'manifest weight of the evidence' refers to a greater amount of credible evidence." *Eastley*, 2012-Ohio-2179, at ¶ 19. These alleged inconsistencies were identified by defense counsel at trial, and the jury apparently found S.E.'s eyewitness and earwitness identification of Sawyer credible.

**{¶34}** We have explained that when presented with inconsistencies, juries are free to ""believe or disbelieve any of the testimony."" *Olverson* at ¶ 26, quoting *State v. Gatewood*, 2021-Ohio-3325, ¶ 69 (1st Dist.), quoting *State v. Shine-Johnson*, 2018-Ohio-3347, ¶ 65 (10th Dist.). Jurors can assess first-hand a witness's tone, body language, general demeanor, and voice inflections, which are often lost in translation during transcription. *Id.* Indeed, there are "innumerable telltale indications which fall from a witness during the course of his examination [that] are often much more of an indication to judge or jury of his credibility and the reliability of his evidence than is the literal meaning of his words." *Govt. of Virgin Islands v. Aquino*, 378 F.2d 540, 548 (3d Cir. 1967). So, while we consider witness credibility in a manifest-weight review, we afford the trier of fact's credibility determinations some deference. *Olverson* at

¶ 26. And in this case, the inconsistencies and lack of corroboration identified by Sawyer do not undermine the jury's verdicts.

**{¶35}** We hold that Sawyer's conviction is not contrary to the weight of the evidence. We overrule the second assignment of error.

## B. *Sawyer's ineffective-assistance claim requires material outside the record*

**{¶36}** In his third assignment of error, Sawyer argues that he received ineffective assistance of counsel because trial counsel "failed to put on any expert testimony as to an independent investigator/crime scene reconstructionist."

**{¶37}** The Sixth Amendment to the United States Constitution guarantees a defendant "the right . . . to have the Assistance of Counsel for his defence." The Sixth Amendment protects a defendant's right to a fair trial. *Strickland v. Washington*, 466 U.S. 668, 684 (1984). And "'the right to counsel is the right to the effective assistance of counsel.'" *Id.* at 686, quoting *McMann v. Richardson*, 397 U.S. 759, 771, fn. 14 (1970).

**{¶38}** To prove that he received constitutionally ineffective assistance of counsel, Sawyer must show that his trial counsel's assistance was deficient and "that the deficient performance prejudiced the defense." *Id.* at 687.

**{¶39}** Trial counsel's performance is deficient if it "'f[a]lls below an objective standard of reasonable representation.'" *State v. Clarke*, 2024-Ohio-2921, ¶ 39 (1st Dist.), quoting *State v. Quinones*, 2010-Ohio-5240, ¶ 25 (8th Dist.), citing *Strickland* at paragraph two of the syllabus. And demonstrating prejudice requires Sawyer to show "that 'there is a reasonable probability that the outcome of the proceedings would have been different but for the complained-of conduct.'" *Id.*, quoting *State v. Davis,* 2021-Ohio-1693, ¶ 65 (1st Dist.), citing *Strickland* at 694.

**{¶40}** Sawyer argues that his attorney was ineffective for failing to hire an investigator to determine whether a neighborhood doorbell camera recording proved that Sawyer was not in the area and "explain the various routes he could have driven." Unquestionably, "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691.

**{¶41}** But we cannot fairly resolve these claims on direct appeal because our review is limited to the trial court record. *See Morgan v. Eads,* 2004-Ohio-6110, ¶ 13. And an appellate court "cannot infer a defense failure to investigate from a silent record." *State v. Were*, 2008-Ohio-2762, ¶ 244. To substantiate his claims that his attorney's failure to investigate exculpatory evidence was constitutionally ineffective, Sawyer "would need to point to evidence outside the record." *See State v. Hennen*, 2012-Ohio-2278, ¶ 10 (9th Dist.). Sawyer's ineffective-assistance claim is better suited for a postconviction petition, where he can introduce evidence surrounding the adequacy of trial counsel's investigation.[2] *See State v. Blanton,* 2022-Ohio-3985, ¶ 41.

**{¶42}** We overrule the third assignment of error.

## C. *Sawyer's sentence is not contrary to law*

**{¶43}** Sawyer's fourth assignment of error argues that the trial court erred by sentencing Sawyer to the maximum prison term for a second-degree felony because "the record does not support it." During the sentencing hearing, the trial court cited S.E.'s severe injury and Sawyer's "long criminal history [with] a lot of violence."

---

[2] Because these claims require evidence outside of the record, res judicata would not bar Sawyer from raising these claims in a postconviction petition. *See Blanton*, 2022-Ohio-3985, at ¶ 41, citing *State v. Smith*, 17 Ohio St.3d 98, 101, fn. 1 (1985).

**{¶44}** R.C. 2953.08(G)(2) provides this court authority to modify or vacate a felony sentence if we clearly and convincingly find that the record does not support the trial court's sentencing findings "under certain specified divisions, including 'division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code.'" *State v. Poveda*, 2025-Ohio-1075, ¶ 9 (1st Dist.).

**{¶45}** Because those statutory divisions do not apply to Sawyer, our authority to "review [the] sentencing factors contained in R.C. 2929.11 and 2929.12 is limited." *State v. Hart*, 2024-Ohio-4552, ¶ 11 (1st Dist.), *see State v. Smith*, 2024-Ohio-2187, ¶ 14 (1st Dist.). Specifically, we cannot "'independently weigh the factors in R.C. 2929.11 and 2929.12 and substitute our judgment for that of the trial court "concerning the sentence that best reflects compliance with R.C. 2929.11 and 2929.12."'" *Id.*, quoting *State v. Mimes*, 2021-Ohio-2494, ¶ 17 (1st Dist.), quoting *State v. Jones*, 2020-Ohio-6729, ¶ 42. Therefore, we cannot address Sawyer's argument that the record does not support a maximum sentence.

**{¶46}** Sawyer also argues that the trial court failed to consider the principles and purposes of felony sentencing under R.C. 2929.11 and 2929.12. If the court failed to do so, R.C. 2953.08(G)(2)(b) permits us to reverse or modify a sentence as "otherwise contrary to law."

**{¶47}** To effectuate the purposes of felony sentencing identified under R.C. 2929.11, trial courts must "consider the need for incapacitating the offender, deterring the offender and others from future crime, rehabilitating the offender, and making restitution to the victim of the offense, the public, or both." R.C. 2929.11(A). And while a trial court's choice of a felony sentence is an exercise of discretion, the trial court must consider the "seriousness" factors listed in R.C. 2929.12(B), mitigating factors in

R.C. 2929.12(C), and recidivism factors listed in R.C. 2929.12(D) and (E). R.C. 2929.12(A).

**{¶48}** We have explained that a sentence is not clearly and convincingly contrary to law if a trial court considers the R.C. 2929.11 and 2929.12 factors, imposes a sentence in the statutory range, and properly imposes postrelease control. *Hart*, 2024-Ohio-4552, at ¶ 12 (1st Dist.). Trial courts need not ""use specific language or make specific findings on the record [] to evince the requisite consideration of the applicable seriousness and recidivism factors."" *Id.*, quoting *State v. Alexander*, 2012-Ohio-3349, ¶ 24 (1st Dist.), quoting *State v. Arnett*, 88 Ohio St.3d 208, 215 (2000). So, we "presume that the trial court considered R.C. 2929.11 and 2929.12, absent a clear showing to the contrary." *Id.* at ¶ 12, citing *State v. Illing*, 2022-Ohio-4266, ¶ 26 (1st Dist.).

**{¶49}** Sawyer is correct that the trial court did not reference the purposes and principles of felony sentencing under R.C. 2929.11, or the mitigating or enhancing factors under R.C. 2929.12. But we presume that the trial court considered the appropriate statutory factors "unless the defendant affirmatively shows to the contrary." *State v. Clinton*, 2017-Ohio-9423, ¶ 243.

**{¶50}** Here, the record does not suggest that the trial court failed to consider the relevant principles and purposes of felony sentencing, or the relevant sentencing factors. Because we must presume that the trial court considered the relevant statutory principles when sentencing Sawyer absent a showing to the contrary, we hold that his sentence is not contrary to law. We overrule the fourth assignment of error.

### III. Conclusion

**{¶51}** We overrule Sawyer's four assignments of error and affirm the trial court's judgment.

Judgment affirmed.

CROUSE, P.J., and NESTOR, J., concur.